## C. J. BENDER v. CITY OF FERGUS FALLS.[1]

June 23, 1911.

Nos. 17,111—(163).

Intoxicating liquor — repayment of license fee.

Section 1536, R. L. 1905, providing for the refundment in certain cases of money paid for licenses to sell intoxicating liquor, *held* to vest in the municipal officers discretionary authority only, and is not mandatory.

Action in the district court for Otter Tail county to recover $516.06, balance of annual license fee of $1,200 for selling intoxicat-

[1] Reported in 131 N. W. 849.

---

[Note] As to recovery of unearned liquor license fee, see note in 16 L.R.A. (N.S.) 512.

ing liquor. From an order, Baxter, J., overruling its demurrer to the complaint, defendant city appealed. Reversed.

*N. F. Field,* for appellant.

*George W. Frankberg,* for respondent.

BROWN, J.

Plaintiff was duly licensed to deal in intoxicating liquors by the common council of the city of Fergus Falls. Subsequent to granting the license an election was held in the city, at which the question whether licenses for the sale of liquors should be granted was submitted to the electors, resulting in a majority vote against license. Plaintiff's license became thereby, by operation of law, revoked. Section 1536, R. L. 1905. He closed his place of business, and thereafter presented to the city council a claim for a return of that portion of the license fee covering the period subsequent to the election. The council returned a part of the amount claimed, and refused to refund the balance, amounting to $516.06. Plaintiff then brought this action to recover that amount. Defendant demurred to the complaint, and appealed from an order overruling the same.

The only question involved is whether plaintiff is entitled, under our statutes, to a refundment as a matter of law; it being conceded that the annulment of his license was not because of any fault on his part. The question is controlled by the construction to be given section 1536, R. L. 1905. That statute provides:

"Every liquor license shall be annulled by operation of law: (1) By the death of the licensee. (2) By the sale of liquor becoming unlawful in the place for which such license is granted. (3) When granted by a county board, by the subsequent inclusion of the place for which it was granted within a municipality. In such cases, and in no other, such part of the license fee as corresponds to the time such license had yet to run may be returned."

The whole question turns upon the force and effect to be given the last three words of this quotation, "may be returned."

It is the contention of plaintiff that the word "may" should be read "shall," and the statute construed as mandatory. We are unable, after due reflection, to so construe the statute. The question

whether money paid for the privilege of dealing in intoxicating liquors may be returned by the public authorities to the licensee upon the revocation of his license by operation of law and for no fault of the holder is a matter purely of legislative cognizance. Without statutory authority no refundment can properly be made. If we were dealing with the question from the standpoint of right and wrong, there would perhaps be no difficulty in concluding that a refundment should be made in such cases; particularly in view of the fact that the privilege paid for and arbitrarily taken away works an apparent injustice to the licensee. But the question is controlled wholly by the legislative intent in the enactment of the statute referred to, and our only authority in the premises is the ascertainment of that intent.

It is unnecessary to discuss the general rules of statutory construction which the courts apply in determining whether a particular statute is mandatory or permissive in operation and effect; for a reference to the history of the statute under consideration, coupled with other provisions of the same law respecting the distribution of saloon license money, leaves no fair doubt of the legislative intent to vest in the municipality a discretionary power in the matter of such refundments. The first declaration of the legislature upon the subject is found in chapter 154, pp. 287, 288, Laws 1897. It was there provided that where a license, regularly issued, became annulled by operation of law, that is, by an election, held subsequent to the issuance and before the expiration of the license, declaring against license, "then the municipal authorities of any city, village or borough, *shall* refund to the holder of said license an amount pro rata equal to the unexpired portion of said license." By the second enactment on the subject the legislature, by chapter 265, p. 386, Laws 1903, provided that in the event of the death of the licensee the officers of the municipality *may,* if they deem it just and to the best interest of the municipality, refund to the representative of the deceased licensee a pro rata proportion of the money paid. The first statute, as will be noticed, provided that refundment in the instance there mentioned "shall" be made, and was mandatory, while the second left the matter to the discretion of the municipal authorities.

Thus the law remained until the revision of 1905. The two statutes referred to became, in that revision, the subject-matter of section 1536. Though somewhat enlarged by the revision commission, they reported to the legislature a purpose to retain the previous law in point of substance, though they made the matter of refundment in all cases mandatory; that is, the section as written by them provided that refundment "shall be made." If the statute had been enacted in this form, no question could have arisen respecting its proper construction or meaning. It would have unconditionally required a refundment. But it was not so enacted. When the proposed statute came before the legislature for consideration, the word "shall" in the last clause thereof was stricken out, and the word "may" inserted in its place, and, as so changed, became the law of the state. This change was substantial, and clearly indicative of a purpose to leave the whole matter within the discretion of the municipal authorities. It cannot well be said, by the method of judicial construction, that the change was without distinct purpose or effect. This view is strengthened by a consideration of the provisions of section 1539, enlarged and extended by chapter 433, p. 615, Laws 1907, and again by chapter 450, p. 548, Laws 1909 (R. L. Supp. 1909, § 1539), directing and authorizing the distribution and application of money received for liquor licenses.

Section 1539, before and at the time of the revision, provided that one-half of all money paid into the county treasury for licenses should be credited to the road and bridge fund of the county, and one-half to the road and bridge fund of the town in which the drinking place is located, and, further, that all money paid into any municipal treasury for such licenses should be credited to the general fund, "but the council may appropriate any part thereof to any school district wholly or partly within such municipality for general or specific purposes. Such council may also appropriate the whole or any part thereof to the construction or repair of roads or streets within or adjacent to or leading from such municipality." The legislature, in changing the proposed statute and leaving the matter within the discretion of the municipal authorities, undoubtedly had in mind the fact that money so paid might, previous to the annulment of a license,

be appropriated to the purposes indicated by this statute, and that it would be unfair to require the general taxpayers of a particular municipality to refund the amount when they had received no benefit therefrom, which would be the case if appropriations were made to school districts or for the improvement of roads outside the borders of the municipality.

In the case of counties, the requirement is absolute that one-half of the money shall be credited to the town in which the saloon is located. In that case the general taxpayers would, if the statute be construed as mandatory, be compelled to return the money so credited to the town, and of which the town received the exclusive benefit. This situation, as respects both the county and the city or village, furnishes a sound reason for attributing to the legislature a purpose to refer the question of the propriety of a refundment to the local authorities, under which, if the funds or any part thereof be on hand and not yet appropriated to the purposes stated, a refundment may well, and perhaps ought to, be made. If previously appropriated, however, it cannot in fairness be said that the taxpayers, who have received no benefit therefrom, should return the money; but where they have received the benefit of the money, or any part thereof, they are in no manner prejudiced by a return of the benefit so received. Our conclusion, therefore, is that the statute is permissive, vesting in the municipal authorities the right to determine the propriety and extent of a refundment in each case as presented.

The case of Hunter v. City of Tracy, 104 Minn. 378, 116 N. W. 922, where the word "may" was construed as "shall" is clearly distinguishable. That case involved the validity of a statute providing for setting off certain agricultural land from the municipality in which located. The statute on its face vested discretionary authority in the court in determining whether relief should be granted in any particular case. It provided that the court "may grant the relief." The court applied the general rule invoked by respondent in the case at bar, and construed the statute mandatory, although permissive, in its language. If the construction had been otherwise, the statute would have been unconstitutional, as vesting in the court legislative power; and, to avoid so declaring it, the court was governed

by the further general rule that when a statute is susceptible of two constructions, one of which will uphold and the other render it invalid, the former will be adopted, and the statute sustained. That rule does not apply to the statute here in question.

Attention was called upon the argument to an opinion of an assistant attorney general construing the statute contrary to the views herein expressed, but the considerations leading to our conclusion do not seem to have been called to his attention.

Order reversed.