KENNETH D. HASSLER v. LeROY D. ENGBERG AND OTHERS. ARMAND W. HARRIS, APPELLANT. MINNEAPOLIS FIRE DEPARTMENT RELIEF ASSOCIATION, ST. PAUL FIRE DEPARTMENT RELIEF ASSOCIATION, AND DULUTH FIREMEN'S RELIEF ASSOCIATION, INTERVENERS.[1]

April 6, 1951.

No. 35,328.

[1]Reported in 48 N. W. (2d) 343.

488

*J. A. A. Burnquist,* Attorney General, and *Lowell J. Grady,* Assistant Attorney General, for appellant Armand W. Harris.

*John T. O'Donnell,* for appellant Minneapolis Fire Department Relief Association.

*Lewis L. Anderson,* for appellant St. Paul Fire Department Relief Association.

*Gillette, Nye, Montague, Sullivan & Atmore,* for appellant Duluth Firemen's Relief Association.

*Charles S. Kidder,* for respondent Kenneth D. Hassler.

*Snyder, Gale, Hoke, Richards & Janes* and *Nathan A. Cobb,* for respondents LeRoy D. Engberg and Travelers Fire Insurance Company of Hartford, Connecticut.

*John F. Bonner,* City Attorney, and *Raymond H. Hegna,* Assistant City Attorney, for the City of Minneapolis; *William M. Serbine,* Corporation Counsel, and *Marshall F. Hurley,* Assistant Corporation Counsel, for the City of St. Paul; and *Harry E. Weinberg,* City Attorney, for the City of Duluth, filed a brief as *amici curiae* in support of the constitutionality of M. S. A. 69.54.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying a new trial.

Plaintiff is and has been the owner of a home in the city of St. Paul, with structures thereon consisting of a house and garage, and he also owned household goods located in his home. Defendant Engberg, referred to hereinafter as the agent, is a St. Paul agent for defendant Travelers Fire Insurance Company of Hartford, Connecticut, a foreign company admitted to do business in Minnesota, referred to hereinafter as Travelers. Plaintiff previously had fire insurance in Travelers on his property amounting to $4,000 on the buildings and $1,000 on the contents. In June 1948, he applied to the agent for additional fire insurance coverage of $3,000 on the buildings and $500 on the personal property, and shortly thereafter the agent delivered to him a standard form of fire insurance policy for the additional insurance issued by Travelers. Plaintiff promptly paid the regular premium of $21.50 on the additional coverage, but refused to pay a surcharge of two percent of the premium demanded by the agent and Travelers pursuant to an

order of defendant Armand W. Harris as state commissioner of insurance, referred to hereinafter as the commissioner, which order was issued pursuant to Ex. Sess. L. 1933-1934, c. 53, § 1, as amended by L. 1937, c. 361 (M. S. A. 69.54). Section 69.54 reads:

"When the balance in the special fund of any firemen's relief association in any city of the first class is less than $600,000, as determined by the association's board of trustees, which fact shall be duly certified to by the public examiner, the board of trustees may thereupon file its duly verified petition for relief, accompanied by such certificate, with the commissioner. *The commissioner shall thereupon order and direct a surcharge to be collected of two per cent of the fire, lightning, and sprinkler leakage gross premiums,* less return premiums, on all direct business received by any foreign or domestic fire insurance company on property in this city of the first class, or by its agents for it, in cash or otherwise, until the balance in the special fund of the relief association amounts to $600,000 and for a period of 15 days thereafter. As soon as the balance in this special fund amounts to $600,000 the board of trustees of the relief association shall certify that fact to the commissioner, who shall forthwith issue his order directing that the collection of the surcharge be discontinued after the expiration of the 15-day period and forthwith mail a copy of this order to each insurance company affected thereby. *This surcharge shall be due and payable from these companies to the state treasurer, in semi-annual instalments,* on June 30th and December 31st of each calendar year, and if not paid within 30 days after these dates, a penalty of ten per cent shall accrue thereon and thereafter this sum and penalty shall draw interest at the rate of one per cent per month until paid." (Italics supplied.)

Upon the refusal of plaintiff to pay the two percent surcharge, the agent and Travelers threatened to cancel plaintiff's policy unless he paid the surcharge by September 15, 1948, on the claim that the order of the commissioner required them to collect the surcharge or to cancel the policy. Plaintiff then made a demand on

the commissioner to set aside the order for the collection of the surcharge, contending that the commissioner's order and § 69.54 are void. The commissioner refused to set aside his order. He contends that § 69.54 and his order thereunder are valid and lawful. Plaintiff thereupon brought this action against the agent, Travelers, the commissioner, and J. A. A. Burnquist as attorney general. The action was later dismissed against the attorney general.

The relief prayed for by plaintiff in his complaint was:

(1) A judgment declaring (a) that Ex. Sess. L. 1933-1934, c. 53, as amended, is null and void and of no force or effect; and (b) that the order of the commissioner ordering and directing the collection of the surcharge is unauthorized, null, and void and does not constitute authority to the agent and Travelers to collect the surcharge from plaintiff.

(2) A judgment declaring that plaintiff does not owe the surcharge to the agent and Travelers and is not required to pay it as a condition to maintaining the policy in force.

(3) A temporary injunction enjoining the commissioner from revoking the licenses of Travelers as a foreign fire insurance company and of the agent, or from imposing on either of them any of the penalties provided for violation of the insurance laws of this state because of or on account of their failure to cancel the fire insurance policy for nonpayment of the surcharge by plaintiff.[2]

(4) A temporary injunction enjoining Travelers and the agent from cancelling or taking up plaintiff's policy because of nonpayment of the surcharge.

(5) A judgment permanently enjoining defendants from doing any of the acts against which a temporary injunction is prayed.

Complaints in intervention were interposed by Minneapolis Fire Department Relief Association, St. Paul Fire Department Relief

---

[2]With reference to penalties, § 69.54 provides that the surcharge shall be due and payable *from the insurance companies* referred to in the act to the state treasurer in semiannual installments, and that if not paid within 30 days after the dates designated in the act *a penalty* of ten percent shall accrue, with interest.

Association, and Duluth Firemen's Relief Association.

The matter was heard by the court without a jury, and the court made findings of fact and concluded:

(1) That plaintiff has a direct interest in the matter of the validity of the act involved and in the order of the commissioner and that a justiciable controversy is presented.

(2) That Ex. Sess. L. 1933-1934, c. 53, violates the uniformity requirements of Minn. Const. art. 9, § 1, and is invalid as special legislation.

(3) That plaintiff is entitled to judgment declaring that he is not required to pay the surcharge as a condition to maintaining his policy in force.

(4) That plaintiff is entitled to judgment permanently restraining and enjoining the agent and Travelers from canceling or taking up his insurance policy because of nonpayment of the surcharge.

The court ordered judgment accordingly. The commissioner and interveners moved the court for amended findings of fact and conclusions of law or, in the alternative, for a new trial and for an order staying the entry of judgment. With the exception of a slight change in the findings, the motion was denied, but a stay of proceedings was granted. The commissioner and interveners thereupon appealed from the trial court's order denying a new trial.

Thirty-five errors are assigned. We shall consider the principal ones in connection with the various issues herein determined. The pertinent questions involved, as raised by appellants, are as follows:

(1) Is there a justiciable controversy presented?

(2) Does Ex. Sess. L. 1933-1934, c. 53 (§ 69.54) violate the uniformity requirements of Minn. Const. art. 9, § 1?

(3) Is § 69.54 special legislation on the ground that it purports to regulate the affairs of cities and is not a general law or uniform in its application to cities of the first class?

(4) Does § 69.54 unconstitutionally delegate legislative power

to the trustees of firemen's relief associations of cities of the first class?

■ Appellants contend that there is no justiciable controversy presented within the meaning of the uniform declaratory judgments act (§§ 555.01 to 555.16) because § 69.54 does not impose a tax or surcharge upon plaintiff and that, even if it did, he is not in a position to challenge the constitutionality of the act under the circumstances here. It is their position that the act imposes a tax upon the fire insurance company and not upon plaintiff and that he therefore cannot challenge the constitutionality of the act under the rule that one who is not directly injured or affected by the act may not be heard to challenge its constitutionality. They argue that the imposition of the tax is upon the insurance companies and not upon the purchaser of insurance; that failure to pay the tax to the state results in a penalty against the insurance company but not against the purchaser of insurance; that plaintiff here, if he pays the surcharge or tax, pays it to the insurance company from which he purchased his insurance and not to the state; and that the state's right of action for the tax is against the insurance company and not against plaintiff. That being so, they insist that there is no controversy between plaintiff and the commissioner; therefore, that there is no justiciable issue between those parties; and that the action against the commissioner must fail because it is of no concern to plaintiff.

The trial court concluded that plaintiff had a direct present interest in the matter of the validity of the act and the order of the commissioner and that the case presented a good-faith controversy proper for a declaratory judgment thereon, with the right to supplemental relief by injunction.

We have here an action for a declaratory judgment, as well as for an order restraining the commissioner from the collection of the surcharge imposed by § 69.54.

Section 555.02 of the uniform declaratory judgments act provides:

"Any person interested under a * * * written contract * * * or

whose rights, * * * or other legal relations are affected by a statute, * * * may have determined any question of construction or validity arising under the instrument, statute, * * * and obtain a declaration of rights, status, or other legal relations thereunder."

It is a well-established rule of law in this state that a court has no jurisdiction to render a declaratory judgment in the absence of a justiciable controversy. State ex rel. Smith v. Haveland, 223 Minn. 89, 25 N. W. (2d) 474, 174 A. L. R. 544; County Board of Education v. Borgen, 192 Minn. 512, 257 N. W. 92; Seiz v. Citizens Pure Ice Co. 207 Minn. 277, 290 N. W. 802.

In connection with the discussion of proceedings for a declaratory judgment, this court said in the Seiz case (207 Minn. 281, 290 N. W. 804):

"Proceedings for a declaratory judgment must be based on an actual controversy. The controversy must be justiciable in the sense that it involves definite and concrete assertions of right and the contest thereof touching the legal relations of parties having adverse interests in the matter with respect to which the declaration is sought, and must admit of specific relief by a decree or judgment of a specific character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

See, also, State ex rel. Smith v. Haveland, 223 Minn. 89, 92, 25 N. W. (2d) 474, 477, 174 A. L. R. 544.

It is our opinion that the trial court was correct in concluding that a justiciable controversy did exist between plaintiff and defendants within the meaning of the uniform declaratory judgments act. It further appears that it is a live, present controversy, concrete and definite, based on present facts and rights immediately threatened, and is therefore proper for adjudication. Aetna L. Ins. Co. v. Haworth, 300 U. S. 227, 57 S. Ct. 461, 81 L. ed. 617, 108 A. L. R. 1000; see, also, Monamotor Oil Co. v. Johnson, 292 U. S. 86, 54 S. Ct. 575, 78 L. ed. 1141.

We next come to the question in connection with assignments of error Nos. 6 to 27 and 30 to 35, both inclusive, as to whether the

act is unconstitutional in that it violates the uniformity requirements of Minn. Const. art. 9, § 1, because the tax imposed thereby (1) is not imposed upon self-insurers; (2) is imposed upon the premium paid and not upon the value of the property insured; (3) has not been collected in the past upon premiums paid under marine insurance, for fire insurance written upon motor vehicles, or to nonlicensed companies; or (4) is not imposed upon premiums on fire insurance written upon property outside cities of the first class. The trial court answered these questions affirmatively. Appellants contend that they should have been answered in the negative.

Our present uniformity clause, Minn. Const. art. 9, § 1, was adopted by the people in 1906. Prior to that time, as the constitution stood from the time of the organization of the state, all taxes were required to be raised under the system known as the general property tax. Because of dissatisfaction with the results of that method and the development of more scientific and satisfactory methods of raising revenue, the amendment was adopted which provided that taxes should be uniform upon the same class of subjects. This amendment, quite commonly referred to as the "wide open tax amendment," was declared legally adopted by the supreme court in McConaughy v. Secretary of State, 106 Minn. 392, 119 N. W. 408.

Referring further to the amendment, this court said in Reed v. Bjornson, 191 Minn. 254, 258, 253 N. W. 102, 104:

"Our uniformity clause was the major restriction placed upon the legislature by the present art. 9, § 1, when adopted by the people in 1906. Prior to that time our constitution had required taxes to be as 'nearly equal as may be and that all property upon which taxes are levied shall have a cash valuation and be equalized and uniform throughout the state.' The present art. 9, § 1, requiring taxes to be 'uniform on the same class of subjects,' was adopted under circumstances which conclusively show that it was the purpose of the people to relieve the legislature of the rather narrow restrictions theretofore placed upon that branch of the government by the constitution and to enlarge its powers in regard to taxation."

The court went on to say in that case that the history of the times indicated clearly that the people, in adopting the 1906 amendment, were liberating the legislature from most of the previous constitutional restraints in regard to taxation; that the fair adjustment of tax burdens under rapidly changing social conditions demanded more comprehensive powers in the legislature; and that the people, relying upon the responsibility of that body to its constituents, relaxed the restraints theretofore existing by enlarging, not curtailing, the legislative power. It would thus appear that by the 1906 amendment it was the intention of the people to amend the old strict equality rule by requiring taxes to be uniform on the same class of subjects, with previous restraints relaxed so that the legislature would have more liberal powers in regard to matters of taxation.

Appellants contend that since the adoption of the 1906 amendment the only uniformity requirement of the Minnesota constitution has been that taxes "shall be uniform upon the same class of subjects" and that the old strict equality rule no longer applies in this state. They maintain that the courts no longer follow the policy of cataloguing a tax as a property tax or a privilege tax, for example, and then determining its validity on the basis of the classification to which it is assigned; but, rather, that they now adopt the rule that a tax is merely a forced exaction by the government from a particular class of taxpayers or tax subjects for the support of some governmental activity or purpose. It is their position that if the exaction of the tax can be supported on any theory or any combination of theories as to the nature of the tax it is the duty of the court to support it and that the same tax can be sustained as a property tax against one taxpayer and as a privilege tax against another.

Plaintiff, on the other hand, contends with equal emphasis that the tax provided by the act in question is not uniform and that it violates Minn. Const. art. 9, § 1; that it is not uniform in its territorial scope or upon the same class of subjects in all cities of the first class or even in one city; that proper classification must be

based upon the relation of the subjects of the tax as they are classified to the purpose or object of the act; and that the surcharge act is special legislation and violates Minn. Const. art. 4, §§ 33 and 34.

In approaching a construction of the constitutionality of the act in question, we must be guided by certain familiar rules: (1) The intent of the legislature is to be ascertained from the language of the entire act read in the light of the object evidently in view; (2) every presumption is in favor of the constitutionality of an act of the legislature, and it should not be declared unconstitutional unless the court is satisfied, after careful consideration, that it conflicts with some provision of the state or federal constitutions; and (3) if the act is reasonably susceptible of two different constructions, one of which will render it constitutional and the other unconstitutional, the former construction must be adopted. State ex rel. Hildebrandt v. Fitzgerald, 117 Minn. 192, 134 N. W. 728.

Minn. Const. art. 9, § 1, provides in part as follows:

"The power of taxation shall never be surrendered, suspended or contracted away. Taxes shall be uniform upon the same class of subjects, and shall be levied and collected for public purposes, * * * ."

Art. 4, § 33, provides:

"* * * The legislature shall pass no local or special law regulating the affairs of, or incorporating, erecting or changing the lines of, any county, city, village, * * * or creating the offices, or prescribing the powers and duties of the officers of, or fixing or relating to the compensation, * * * or the mode of election or appointment thereto, * * * . Provided, however, That the inhibitions of local or special laws in this section shall not be construed to prevent the passage of general laws on any of the subjects enumerated."

Art. 4, § 34, provides:

"The legislature shall provide general laws for the transaction of any business that may be prohibited by section one (1) of this

amendment, and all such laws shall be uniform in their operation throughout the State."

In support of their position as to the change of attitude on the part of courts toward tax laws, appellants cite L. 1923, c. 226, imposing a tax on royalties for permission to explore, mine, take out, or remove ore from land in this state. They contend that the law clearly shows that its language is applicable only to a tax on the royalty as income and that nowhere in the law is there a suggestion that it is a tax on the land from which the royalty was received. They then claim that when its constitutionality was attacked in Lake Superior Cons. I. Mines v. Lord, 271 U. S. 577, 581, 46 S. Ct. 627, 629, 70 L. ed. 1093, 1101, the United States Supreme Court avoided the question of the constitutionality raised if the tax were treated as one upon the royalty as income by saying:

"* * * Ultimate construction of Chapter 226 is for the state courts, but, in the absence of that, we think the enactment may be reasonably interpreted as laying a tax upon interests in mineral lands from which permission has been given to extract ores upon payment of royalty."

When the matter came before this court in a suit over the question whether the lessor or the lessee under the ordinary mining lease was required to pay the tax, the court said in Marble v. Oliver I. Min. Co. 172 Minn. 263, 264, 215 N. W. 71:

"Defendant contends the tax is not a tax upon lands; at most it reaches only an incorporeal hereditament. State v. Royal Min. Assn. 132 Minn. 232, 156 N. W. 128, Ann. Cas. 1918A, 145. It is also claimed to be a personal tax of the lessor of ore lands, enforceable against him personally by aid of a lien provision upon his reversionary interest in such lands. It is true that L. 1923, p. 258, c. 226, at first blush appears to impose the tax upon the lessor personally, but if so construed difficulties constitutional and practical at once arise. *If an act of the legislature is reasonably susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, the court should adopt*

*the former.* Stewart v. G. N. Ry. Co. 65 Minn. 515, 68 N. W. 208, 33 L. R. A. 427; Bender v. City of Fergus Falls, 115 Minn. 66, 131 N. W. 849; State ex rel. Hildebrandt v. Fitzgerald, 117 Minn. 192, 134 N. W. 728; Alexander v. McInnis, 129 Minn. 165, 151 N. W. 899. When the statute involved deals with large public revenues, it is peculiarly important that the rule stated be heeded. We conclude the royalty tax to be a tax on the right, title and interest in ore lands of the owner thereof who has granted another the right to mine the ore for a stipulated consideration, payable at certain times during a period of years." (Italics supplied.)

Appellants then argue that if the law and the above two decisions are analyzed it is apparent that the court has reversed the traditional process. They claim that, instead of examining the law and from its language determining first its nature and then considering its constitutionality as against the objection that it could not be collected on royalty received or paid outside the state to a nonresident, the court in effect said that since that construction, normally suggested by the language of the act, would raise constitutional questions, it would adopt the other construction, namely, that it was a property tax, under which theory it would be constitutional.

Appellants present as a second illustration the Minnesota motor vehicle tax law (L. 1921, c. 461), which they claim was passed under a constitutional amendment which on its face appeared to make it a property tax. The question came before this court in State v. Peterson, 159 Minn. 269, 198 N. W. 1011, as to whether L. 1921, c. 461, § 16, contravened Minn. Const. art. 16, § 3, commonly known as the Babcock amendment, which read in part as follows:

"The legislature is hereby authorized to provide, by law, for the taxation of motor vehicles, using the public streets and highways of this state, on a more onerous basis than other personal property; * * *."

Pursuant to this grant of authority, the legislature enacted L. 1921, c. 461, § 16, providing in part as follows:

"Every motor vehicle (except those exempted in Section 2 of this act) shall be deemed to be one using the public streets and highways and hence as such subject to taxation under this act if such motor vehicle has, prior to the date set for registration thereof, used such public streets or highways, or shall actually use them, or if it shall come into the possession of an owner other than as a manufacturer, dealer, warehouseman, mortgagee or pledgee."

The defendant in the Peterson case was the owner of a car registered under the act and used on the public highways in 1921. During August of that year it was so damaged that it could not be operated without repairs, which were not made. He kept the car in a shed on his premises during the entire year of 1922. It was the owner's contention that, inasmuch as he did not exercise the privilege of using the trunk highway system during that year, his car was taxable only as personal property is taxed. Proceedings were started in district court against the owner to enforce payment of the motor vehicle tax. The trial court dismissed the proceedings and directed that the tax be discharged. The state appealed to this court from an order denying a new trial and from the judgment for dismissal and obtained a reversal. This court held that the tax imposed by the act was not a privilege tax but a tax on property, saying (159 Minn. 271, 198 N. W. 1011):

"Neither the Constitution nor the act contemplates a privilege tax. The right to use the public highways is not taxed. The owner's property right in a motor vehicle is taxed."

Later, in State v. Oligney, 162 Minn. 302, 202 N. W. 893, this court was presented with a situation where the law could not be sustained as a property tax, since the defendant in that case was a resident of Wisconsin, and the owner of a motor truck used in commercial freighting over a regular route between points in Wisconsin and Minnesota. This court said that the motor truck was subject to the motor vehicle tax imposed by L. 1923, c. 418. It appears that the tax there was sustained against the owner as a privilege tax. The court there said (162 Minn. 307, 202 N. W. 895):

"\* \* \* In other words, the privilege of operating a motor vehicle upon our highways is conditioned upon the payment of the tax. \* \* \*

\* \* \* \* \*

"Seemingly the purpose of the act is threefold: (1) To tax motor vehicles as property; (2) to tax them for the privilege of using the public highways; (3) to compel the owners to display number plates for the purpose of identification.

"*Whether we call the tax a property tax or a privilege tax, or both, is of no great consequence so far as this case is concerned.* The tax cannot be escaped merely because defendant is a nonresident or because he uses his truck to transport goods in interstate commerce." (Italics supplied.)

A third illustration involves State v. Storaasli, 180 Minn. 241, 230 N. W. 572. That was another proceeding by the state to collect a license tax on an automobile. Defendant in that case was a member of the military forces of the United States stationed at Fort Snelling. He owned an automobile, kept it at the fort, but used it for travel on the highways of the state outside the reservation. He claimed in his answer that he had not used the car on the highways for any one period of ten consecutive days and that therefore he used it only as a visitor for brief periods at a time. The court sustained the tax against him, saying (180 Minn. 243, 230 N. W. 574):

"The license tax is both a property tax and a privilege tax. State v. Oligney, 162 Minn. 302, 202 N. W. 893; Raymond v. Holm, 165 Minn. 215, 206 N. W. 166. It is a property tax in the sense that it exempts the vehicle licensed from other taxation as property. It is in lieu of other taxes. But it is equally clear that it is a privilege tax. \* \* \* It is a tax imposed for the privilege of using the public highways of the state and collected for the specific purpose of building and maintaining such highways. The elements of property tax and privilege tax are inseparable. American Ry. Exp. Co. v. Holm,. 173 Minn. 72, 216 N. W. 542."

It would thus appear from a review of the above cases that this court has held in effect that the same tax can be sustained as a property tax against one taxpayer, as a privilege tax against another, and as a combination property and privilege tax against a third.

In Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102, one of the cases cited as controlling by appellants, proceedings were brought under the uniform declaratory judgments act to test the constitutionality of L. 1923, c. 405, an act imposing income taxes and franchise or privilege taxes measured by income for the benefit of school districts of the state. Appellants argue that the income tax law clearly stated that as to corporations it was a tax on the franchise to exist or the franchise to do business in the state, but that as to personal income taxes the law made no attempt to set forth the nature of the tax.

In the Reed case, the taxpayer attempted to have the law declared unconstitutional as a tax on income as property because it offended Minn. Const. art. 9, § 1, which provides that taxes shall be uniform upon the same class of subjects, and, further, that it contravened that part of U. S. Const. Amend. XIV, which prohibits a state from denying to any person within its jurisdiction the equal protection of the laws. The proceedings in district court were against the state tax commission, the attorney general, and the state comptroller. Defendants' demurrer to the complaint was overruled. Upon appeal, the trial court was reversed. In discussing the nature of an income tax, this court said (191 Minn. 260, 253 N. W. 105):

"* * * In many ways such a tax is *sui generis*. It imposes a tax on the net income or revenue which passes into or through a man's hands within a prescribed period, a large share of which never finds permanent investment."

In furtherance of appellants' claim that the attitude of the courts has changed toward tax laws, they argue that plaintiff in the trial of the instant case in district court labeled the tax as a property

tax and then attempted to apply tests of constitutionality applicable to property taxes. It is the position of appellants that much of plaintiff's argument fails if we follow the proper rule and say that it is immaterial whether we call the tax a property tax or a privilege tax, since the tax is valid if its constitutionality can be sustained on either theory or on a combination of the two theories. There is merit to the claim of appellants in that respect, because we did say in State v. Oligney, 162 Minn. 302, 202 N. W. 893, *supra,* that it was of no great consequence whether we called the tax a property tax or a privilege tax. We are also bound by the rule which invokes every presumption in favor of the constitutionality of an act of the legislature unless it conflicts with some provision of the state or federal constitutions. Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102, *supra.*

Appellants maintain further that the validity of a tax is not affected by the question whether the money raised is earmarked for purposes irrelevant to the classification upon which the tax is imposed. In other words, they claim that the constitutional requirement of uniformity in a tax goes to the imposition of the tax and not to the earmarking or appropriation of the proceeds.

It appears to have been the position of the Kentucky court in City of Louisville v. Aetna F. Ins. Co. 284 Ky. 154, 143 S. W. (2d) 1074, apparently relied on by the trial court here and by the Mississippi court in Lowry v. City of Clarksdale, 154 Miss. 155, 122 So. 195, as well as the Nebraska court in Continental Ins. Co. v. Smrha, 131 Neb. 791, 270 N. W. 122, cited by plaintiff, that inasmuch as the proceeds of the tax were earmarked for the firemen's pension fund, and since noninsured property shared in the benefits of fire protection with insured property, the legislature could not tax one for that purpose without taxing the other, and that to do so would be a violation of the uniformity clause of the constitution. We cannot agree with that position under the facts and circumstances here.

In New York Rapid Transit Corp. v. City of New York, 303 U. S. 573, 58 S. Ct. 721, 82 L. ed. 1024, where the proceeds of the tax

involved were earmarked by the law for unemployment relief, the court held that the earmarking of the proceeds by the law for a particular purpose was nothing but an appropriation of money for that purpose. During a depression period, the city of New York imposed a tax on utility companies in the city for the purpose of providing relief to unemployed persons. Several of the utility companies joined in an attack on the law as being violative of the equal protection and due process clauses of U. S. Const. Amend. XIV, and of the contract clause of U. S. Const. art. I, § 10. They contended, among other things, that they were no more responsible for unemployment in the city than were many other industries. In upholding the constitutionality of the law, the court said in part (303 U. S. 586, 587, 58 S. Ct. 728, 82 L. ed. 1034, 1035) :

"* * * Taxes are repeatedly imposed on a group or class without regard to responsibility for the creation or relief of the conditions to be remedied. * * * There need be no relation between the class of taxpayers and the purpose of the appropriation.

"* * * The 'object' of the Local Laws under consideration, as in the case with most tax statutes, was obviously to secure revenue. In some cases a classification of taxpayers may be upheld as having a fair and substantial relation to a constitutional non-fiscal object [citing cases], but it is not constitutionally necessary that the classification be related to the appropriation. * * * We conclude, therefore, that the provisions of the legislation earmarking the funds collected are not of importance in determining whether or not the classification of the challenged acts is discriminatory."

The court held in effect that under the facts and circumstances there the utility companies involved could be put in a special class for the purpose of taxation, and the fact that the tax was levied for the specific purpose of relieving unemployment conditions which had no special relationship to the utility companies taxes did not render it unconstitutional.

In Carmichael v. Southern Coal & Coke Co. 301 U. S. 495, 508,

509, 510, 57 S. Ct. 868, 872, 81 L. ed. 1245, 1252, 1253, 109 A. L. R. 1327, Mr. Justice Stone, speaking for the court, said:

"Taxes, which are but the means of distributing the burden of the cost of government, are commonly levied on property or its use, but they may likewise be laid on the exercise of personal rights and privileges. * * *

*　*　*　*　*

"* * * It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. [Citing cases.] This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation. [Citing cases.]

"Like considerations govern exemptions from the operation of a tax imposed on the members of a class. A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it. [Citing cases.]

"* * * A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action."

It appears to us that the arguments advanced by plaintiff and adopted by the trial court in declaring the act in question unconstitutional may be summarized in three principal groups:

(A)   That the tax is in effect a property tax and, if so, is unconstitutional and violates the uniformity rule because some of the property which derives benefits from fire protection in cities

of the first class—such as that of some large corporations, for example, owned by self-insurers—do not carry insurance in fire insurance companies and therefore do not pay the tax.

(B) That the tax has not been collected in the past upon premiums, including protection against fire, on some forms of insurance, such as marine and fire insurance written upon automobiles.

(C) That the tax violates the uniformity rule because it is not applicable to all parts of the state, in that it is not imposed upon premiums on fire insurance written upon property outside cities of the first class.

A. We have already cited cases sustaining the principle that whether we call the tax a property tax or a privilege tax its constitutionality must be upheld if an act of the legislature is reasonably susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, and that this court has held in effect that the same tax can be sustained as a property tax against one taxpayer, as a privilege tax against another, and as a combination privilege and property tax against a third.

We can find nothing in the act we are considering which clearly designates it as either a property tax or a privilege tax. It could be considered (a) a tax on insurance premiums as property; (b) a tax upon the property upon which the insurance premiums are paid; (c) a tax on the privilege of the insurance company of writing insurance; or (d) a tax upon the privilege of the property owner insuring his property against the risk of fire. If treating it as a tax upon the property upon which the insurance premiums are paid raises constitutional doubts, it is still our duty to sustain the law if it can be done and those doubts avoided by treating it either as a tax on the insurance premiums as property, a tax on the privilege of the insurance company of writing insurance, or a tax upon the privilege of the property owner insuring his property against the risk of fire. Under the decisions cited, this court is not required to make an election between these various ways of looking at the tax. It is sufficient that under one or more of them the tax may be sustained. Considering this as a tax upon the insurance premiums

as property, we find no discrimination because of the self-insurers, since in those cases the premium—the property taxed—does not exist. Treated as a tax on the privilege of the insurance company of writing the insurance, the self-insurer presents no problem, since the insurance company is not exercising the privilege of insuring the property of such self-insurers. Considered as a tax upon the privilege of the property owner insuring his property against the risk of fire, no question is presented, because self-insurers have not exercised the privilege of insuring their property. Such self-insurers have elected to take the risk of fire entirely upon themselves without the benefit of the privilege. Even though we treat the tax as one upon the property insured, there are substantial reasons for different treatment. Insured property benefits directly and immediately in a measurable way from improvements in fire departments. As a result of these improvements and because of more efficient fire departments, it is common knowledge that premiums on insurance policies are reduced in a considerable amount. It is our opinion that the constitutionality of the tax can be sustained either as a tax on the privilege of the insurance company of writing insurance or as a tax upon the privilege of the property owner insuring his property against the risk of fire.

B.   In connection with the theory that the act is unconstitutional because the tax has not been collected in the past from marine and automobile fire insurance companies, for instance, plaintiff contends that as a privilege tax it violates the uniformity clause, since those companies insure also against fire.

The legislature has the right of selection and the power to classify by imposing burdens of varying degrees on different classes of property, even to the extent of eliminating entirely the burden of taxation resting upon certain property, subject to the restriction that persons and property within the same class be treated equally and that the classifications made rest upon some ground of difference having a fair relationship to the object of the legislation. General Mills, Inc. v. Division of Employment and Security, 224 Minn. 306, 28 N. W. (2d) 847. This court has held frequently

that the legislature has a wide discretion in classifying property for the purpose of taxation, provided its classifications are based upon differences which furnish a reasonable ground for the resulting distinctions between the several classes. State ex rel. Mudeking v. Parr, 109 Minn. 147, 123 N. W. 408, 134 A. S. R. 759; State v. Minnesota Farmers Mut. Ins. Co. 145 Minn. 231, 176 N. W. 756; Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102; National Tea Co. v. State, 205 Minn. 443, 286 N. W. 360. See, also, Carmichael v. Southern Coal & Coke Co. 301 U. S. 495, 57 S. Ct. 868, 81 L. ed. 1245, 109 A. L. R. 1327, *supra.*

On several occasions since the 1906 amendment, this court has passed upon the question of permissible classifications for purposes of taxation. Raymond v. Holm, 165 Minn. 215, 206 N. W. 166; Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102; Apartment Operators Assn. v. City of Minneapolis, 191 Minn. 365, 254 N. W. 443. In the latter case, under our general property tax, the first $4,000 valuation on a homestead was taxed at one rate and that part of the value over $4,000 was taxed at another rate. In putting marine and automobile fire insurance in a separate class for purposes of taxation, for example, the legislature might well have had in mind that marine insurance ordinarily covers property which is in transit and in a position to benefit from the services of local fire departments on rare occasions only. It might have considered that many automobiles are outside the limits of municipalities part of the time and do not benefit from the services of a local fire department in the same manner as fixed objects such as buildings. The fact that the classification adopted by the legislature may result in some inequality is no reason for declaring the tax unconstitutional. In General Mills, Inc. v. Division of Employment and Security, 224 Minn. 306, 312, 28 N. W. (2d) 847, 850, this court said:

"From the foregoing authorities, it is clear that a legislative classification which may result in inequities or inequalities is not for that reason unconstitutional if it can be established that persons within the classifications made are similarly treated and the dis-

tinctions between classes bear a reasonable relationship to the objects of the legislation."

C. Another attack on the constitutionality of the act is based on the assumed lack of territorial uniformity, in that the tax is not imposed upon premiums on fire insurance written upon property outside cities of the first class.

We do not believe that under the facts and circumstances here the law is unconstitutional merely because it imposes a tax upon fire insurance premiums in certain cities of the first class and does not apply to all parts of the state. As already stated, the legislature, in the enactment of laws, has a wide latitude within the limits of the constitution. In the absence of a record of all the considerations which move a legislature to enact laws, this court cannot assume that the legislature was not informed or was not acquainted with local conditions to which the legislation is to be applied, or that it was not aware of the facts which afforded a reasonable basis for its action. Carmichael v. Southern Coal & Coke Co. 301 U. S. 495, 57 S. Ct. 868, 81 L. ed. 1245, 109 A. L. R. 1327, *supra*. The legislature might have considered, in passing the act, that the efficiency and security of fire departments in cities of the first class, where its members in most instances devote many years to the service, might be improved as a result of the act, and, because of this improvement, public hazards from fire in such cities would be reduced. It might have considered that there would be no necessity for a similar tax on fire insurance premiums in smaller cities and villages in the state, where fire departments are on a volunteer part-time basis and where in many instances the fire-fighting problems are not so complex. It is common knowledge, especially in cities of the first class, that some men spend a great part of their working time in the service of a municipal fire department and become specially trained in the business of fighting fires. That situation does not exist in the case of most small cities and villages, where firemen act on a volunteer basis.

Appellants cite the teachers retirement act as an exact parallel to the situation presented by the firemen's relief law. Under M. S. A.

135.13, the state tax for the support of the teachers pension fund is certified to the state auditor and spread against all property located outside cities of the first class. Also cited by appellants is § 375.33, subd. 1, under which there is a provision for a public library for the benefit of all residents of the county, and the county board is authorized to levy a tax of not to exceed two mills on "all the taxable property outside of any city or village wherein a free public library is located, or which is already taxed for the support of any such library, the proceeds of which tax shall be known as the county library fund." Under L. 1949, c. 405, providing for a county health department, a county levy of one mill is authorized, except in cities of the first and second class not within the jurisdiction of the health department. Under L. 1947, c. 633, § 21, the county levies a tax for nonresident tuition in high schools, to be spread on the property in the school districts of the county which maintain no high school. Under L. 1949, c. 511, the levy made by school districts for school purposes is not the same against agricultural land as it is against other property in the county.

It appears to us that the proper limitations on the doctrine claimed by plaintiff is set forth in one of our early cases, Sanborn v. Commrs. of Rice County, 9 Minn. 258, at p. 262 (273 at p. 278), where the court, even though it was construing the then strict provisions of our constitution on taxation, said:

"From the constitutional restrictions above cited, we think this general rule is clearly deducible—that a tax cannot be imposed exclusively on any subdivision of the state, to pay an indebtedness or claim which is not peculiarly the debt of such subdivision or to raise money for any purpose not peculiarly for the benefit of such subdivision."

Plaintiff cites State ex rel. City of New Prague v. County of Scott, 195 Minn. 111, 261 N. W. 863, as one of the cases upon which it relies. The court in that case did not go to the extent of saying that all taxes levied by a governmental subdivision must reach the full territorial limits of the subdivision. Its statement of principles

512

is qualified by the statement that the law must only (195 Minn. 117, 261 N. W. 866) "bring within its influence all who are under the same conditons." The law in that case was held unconstitutional because there was no claim of difference in conditions between the city of New Prague and other cities or villages in that or other counties which would justify differences in treatment in the matter of road and bridge taxes.

■ The trial court held that § 69.54 purports to regulate the affairs of cities and is not a general law or uniform in its application to cities of the first class and therefore that it violates Minn. Const. art. 4, §§ 33 and 34. With this we cannot agree.

In Nichols v. Walter, 37 Minn. 264, 270, 33 N. W. 800, 801, Mr. Chief Justice Gilfillan, speaking for the court, said:

"It must be conceded that where a general law, uniform in its operation, is required, the law is none the less general and uniform because it divides the subjects of its operation into classes, and applies different rules to the different classes."

A law, to be general, need not operate alike upon all the inhabitants of the state, or all the cities, or all the villages in the state. It is general when it operates alike upon all the inhabitants, or all the cities, or all the villages, or other subjects of a class of such subjects of legislation. It may be necessary, for the purposes of legislation, for the legislature to make such classifications. The only practical limitation to this power is that the classification shall be based upon some reason suggested by necessity or by some difference in the situation and circumstances of the subjects classified suggesting the necessity of different legislation with respect to them. It shall not be merely arbitrary, with no apparent reason except a desire to evade, under the forms of a general law, the constitutional inhibition of special legislation. State ex rel. Oblinger v. Spaude, 37 Minn. 322, 323, 34 N. W. 164, 165.

In Giffin v. Village of Hibbing, 178 Minn. 337, 341, 227 N. W. 41, 42, we find the following:

"It is true the law applies but to few villages. This does not

make it unconstitutional if there are conditions justifying such legislation and a reasonable distinction exists necessitating the same. The presumption maintains that this law is constitutional; that the circumstances and conditions therein specified furnish a proper and sufficient basis for the classification. The basis of the classification is not arbitrary or illusory. It is justified by a natural reason suggested by necessity. In Driscoll v. Commrs. of Ramsey County, 161 Minn. 494, 497, 201 N. W. 945, 946, it is stated:

" 'It is only when the classification is so manifestly arbitrary as to evince a legislative purpose of evading the provisions of the constitution that the courts may and must declare the classification unconstitutional.' "

See, also, Thorpe Bros. Inc. v. County of Itasca, 171 Minn. 312, 213 N. W. 914; 1 Dunnell, Dig. & Supp. § 1678, and cases cited under notes.

This court within recent years referred to this principle in Leighton v. City of Minneapolis, 222 Minn. 516, 25 N. W. (2d) 263, when it held that the amendment (Minn. Const. art. 4, § 36, providing home rule for cities and giving the legislature power to legislate with respect to particular classes of cities) authorizes the legislature to classify, for the purpose of general legislation, cities on the basis of population therein specified, although such basis would not previously have been germane to the purpose and subject matter of the proposed law.

It appears to us in the instant case that there are clear reasons which justified the legislature in treating cities of the first class differently from other cities with respect to firemen's pension and relief. It might have well considered that cities of the first class, because of density of population and proximity of buildings associated with the population and because of the variety of fire risks inducted by industry, presented a problem with respect to fire protection different from that of smaller municipalities. It might have considered also that fire departments in cities of the first class were necessarily much larger and better organized than

in small cities; that civil service and other employment practices made tenure more certain; that the smaller cities of the state quite commonly relied upon volunteer firemen for the personnel of their fire departments; and that it was more important in cities of the first class that there be a continuity of service assured by pensions and relief in these well-organized departments than in smaller cities and villages. It might also have considered that in large fire departments, such as exist in cities of the first class, a pension and relief system would be practical because of the averaging out of risks, while such a system might not be necessary or possible in the case of smaller departments. We are not here concerned with the question whether all these considerations might have been entirely sound, but only with the question whether such considerations might have afforded a reasonable basis for the action of the legislature. It is our opinion that such matters could have been considered and that under the principles above set forth the act cannot be declared unconstitutional as special legislation.

■ The trial court concluded that the act in question involves an unconstitutional delegation of legislative power because it purports to delegate to the boards of trustees of firemen's relief associations in cities of the first class the power in their discretion to levy or not to levy a tax on insuring property owners in their respective cities, and that it thereby violates Minn. Const. art. 3, § 1.

It is apparent that the court came to this conclusion because of the procedure by which the tax is levied, particularly because of the fact that, while levied by state officials, they do not act unless the relief association qualifying under the act (that is, having less than $600,000 in its fund) applies for the relief offered by the legislature. The tax here is imposed by the legislature. Whether or not it will be spread and, if so, in what amount depends, first, upon the qualification of the respective firemen's relief associations to obtain the aid and, second, upon their application for it. The situation here is entirely different from that which exists when an act is not applicable unless a particular municipality or person elects to become subject to it. The act under consideration is applicable

to all cities of the first class. As soon as any relief association can meet the requirements set down in the law and applies for relief, the tax is put into effect. The application under the act settles only the question that there is need for the relief and that there is an applicant for it.

In 1 Dunnell, Dig. § 1600, the general rule is stated as follows:

"While the legislature cannot delegate legislative power it may delegate legislative functions which are merely administrative or executive. It may clothe officials, commissioners, or boards with administrative powers. The legislature has a large discretion in determining the means through which its laws shall be administered. Administrative officers may be clothed with power to exercise a discretion under a law, but not a discretion as to what the law shall be. A statute to be valid must be complete as a law when it leaves the legislature. * * * The legislature may delegate to a commission the power to do some things which it might properly but not advantageously do itself. It may vest in a commission authority or discretion to be exercised in the execution of the law. It may delegate power to determine some fact or state of things upon which the law makes its own action or operation to depend. * * * The legislature may delegate to a board or commission authority or discretion to be exercised in carrying out the purposes of a statute."

State ex rel. Dybdal v. State Securities Comm. 145 Minn. 221, 176 N. W. 759, involved the constitutionality of L. 1919, c. 86, providing for the granting by the state securities commission of a certificate of authority to do business as a bank. The statute authorized the securities commission, an administrative body, to grant a certificate to the applicants if they were of good moral character and financial integrity; if there was a reasonable public demand for a bank in the locality; if the organization expenses paid by the subscribing shareholders did not exceed the necessary legal expenses incurred in drawing the incorporation papers; if the probable volume of business in the location was sufficient to

insure and maintain the solvency of the new bank and the solvency of the then existing banks; and if the commission was satisfied that the proposed bank would be properly and safely managed. The claim was made that the statute was unconstitutional because it conferred legislative power upon the commission. This court held that the statute was not unconstitutional on that ground and said (145 Minn. 223, 176 N. W. 760):

"* * * Neither is legislative power conferred upon the commission. The statute is complete and effective in itself. That the legislature may delegate to commissions and boards administrative functions in carrying out the purposes of a statute is not to be questioned. 1 Dunnell, Minn. Dig. & 1916 Supp. § 1600, and cases cited. And it may confer upon a board or commission authority or discretion to be exercised in carrying out the purposes of a statute. See Williams v. Evans, 139 Minn. 32, 165 N. W. 495, 166 N. W. 504, L. R. A. 1918F, 542, and cases cited and reviewed."

In Johnson v. Richardson, 197 Minn. 266, 266 N. W. 867, the constitutionality of a statute authorizing attachment by the county auditor of rents received from real estate upon which taxes had become delinquent was questioned on the ground that it constituted a legislative delegation of power to the county auditor. It was contended that the statute was unconstitutional because it did not prescribe any rule or regulation for the guidance of the county auditor in determining whether the law should or should not be applied to a particular property. The court held that the law was constitutional and said (197 Minn. 273, 266 N. W. 871):

"* * * The tendency is to hold an act not to be a delegation of legislative power in violation of the constitution when the legislature has defined the general policy of the act as far as is reasonably possible and has left to the administrative bodies the adaptation of such policy to the peculiar varying conditions. 18 Minn. L. Rev. 740, 741."

State ex rel. Benson v. Board of Co. Commrs. 186 Minn. 524, 243 N. W. 851, involved the constitutionality of L. 1931, c. 360. That

act authorized county boards to proceed in their discretion, without petition, to require cattle within the county to be submitted to tuberculin tests and also required the county boards to proceed to put the act in force and effect in the county "upon petition signed by cattle owners residing therein equal in number to a majority of the cattle owners within the county." The argument was made by the appellants in that case that the legislative act involved an unconstitutional delegation of legislative authority and vested resident taxpayers with power to govern the corporate action of the county because, given the requisite petition of resident cattle owners, the county board must take the action indicated. The reasons assigned by the supreme court in that case for upholding the constitutionality of the statute as against this objection are set forth in the following quotation (186 Minn. 527, 243 N. W. 853):

"We have here a general law applicable throughout the state. Before the 1931 amendment it was but a grant of authority. By the amendment it became mandatory upon the happening of the contingencies stated. It applies in one county precisely as in another. The law is everywhere in effect as law. But it does not become the duty of a given board of county commissioners to proceed until they have the petition required. It is no objection on constitutional grounds that procedure under the law is so conditioned. Nor is there delegation of legislative power. The lawmaking power has been fully exercised. What is left is for executive power, which must proceed upon the conditions and in the manner declared by the law. In that is nothing strange or offensive to constitutional restrictions. State ex rel. Tracy v. Cooley, 65 Minn. 406, 68 N. W. 66; State ex rel. Hagestad v. Sullivan, 67 Minn. 379, 69 N. W. 1094; Williams v. Evans, 139 Minn. 32, 165 N. W. 495, 166 N. W. 504, L. R. A. 1918F, 542; State ex rel. Hilton v. City of Nashwauk, 151 Minn. 534, 186 N. W. 694, 189 N. W. 592. As said in Schulte v. Fitch, 162 Minn. 184, 191, 202 N. W. 719, 722: 'A law may permit as well as command.' Conversely, it may command as well as permit. It may command absolutely or upon condition.

Here it has commanded, but upon condition, the conditions being such as the legislature may impose.

"Here, as always, we must hold a law constitutional unless transgression of constitutional limits plainly appears. We have no personal or judicial will to accomplish. We have no power generally over acts of legislation to hold them either good or bad. Their quality, good or bad, is no concern of ours. But when, as here, there is sought the compelled enforcement of an official duty imposed by plain statute, we must examine the law, if the question is made, to see that the sovereign will of the people as expressed by constitution is not violated. We find no such violation in L. 1931, p. 463, c. 360, Mason, 1931 Supp. §§ 5416-5418."

For the reasons hereinbefore stated, we hold (1) that a justiciable controversy is presented; (2) that § 69.54 is not violative of the uniformity requirements of Minn. Const. art. 9, § 1, nor of the due process and equal protection clauses of U. S. Const. Amend. XIV; (3) that § 69.54 is not violative of Minn. Const. art. 4, §§ 33 and 34; and (4) that § 69.54 does not unconstitutionally delegate to the trustees of firemen's relief associations in cities of the first class legislative power in contravention of the constitution.

Reversed with directions to amend the findings of fact and conclusions of law in conformity with this opinion.