MARGIT KALJUSTE v. HENNEPIN COUNTY SANATORIUM COMMISSION AND OTHERS.
AETNA CASUALTY & SURETY COMPANY, RELATOR.[1]

December 4, 1953.

No. 36,084.

*Reynolds & McLeod,* for relator.

*James Pomush,* for employee-respondent.

*Michael J. Dillon,* County Attorney, and *Edward J. Shannon,* Assistant County Attorney, for employer-respondent.

NELSON, JUSTICE.

Certiorari to review an order of the industrial commission affirming the findings of the referee awarding compensation to the petitioner, referred to herein as employee.

The employee, Margit Kaljuste, was employed as a practical nurse by the Glen Lake Sanatorium from April 5, 1949, to September 18,1951, under a Minnesota contract of hire at a weekly wage of $50.77. The employee while so employed sustained an accidental injury, by reason of her contracting tuberculosis, which arose out of and in the course of her employment. This was by virtue of the fact that her duties brought her in contact with tubercular patients at said sanatorium, which was operated by the Hennepin County Sanatorium Commission, referred to herein as employer, as a public tax-supported institution. She was admitted to the sanatorium as a patient on September 25, 1951, and she was still a patient there at the date of hearing on her petition, July 17, 1952. The testimony taken at the hearing before the referee indicated that she had 12 to 14 months of care remaining at that time. The parties agree that she became reinfected with tuberculosis as a result of her employment at the Glen Lake Sanatorium. The referee on September 19, 1952, filed his decision awarding compensation benefits to employee under L. 1947, c. 616, as amended by L. 1949, c. 558 (M. S. A. 251.041 to 251.045) against the employer and its insurer, referred to herein as relator, and awarding hospital and medical benefits against the employer and the State of Minnesota, Department of Social Security.

That the employee falls within the terms of the above-mentioned statute is without dispute, and the employer now concedes liability. The controversy is over whether relator is responsible for the compensation awarded. There is no dispute regarding the award of hospital and medical benefits against the employer and the State of Minnesota, Department of Social Security, since relator did not underwrite these items in the standard workmen's compensation insurance policy which it issued covering this employee. The insurance policy covers only *compensation* awarded within the framework of the workmen's compensation act. Relator issued its policy of insurance insuring the employer against loss arising under the Minnesota compensation laws for the period April 17, 1951, to April 17, 1952, and the policy so issued states in part:

"* * * The obligations of Paragraph One (a) of the Policy apply to the Workmen's Compensation Law herein cited; Chapter 176, General Statutes of Minnesota, 1941, and all laws amendatory thereof *or supplementary thereto* or which are or may become effective during the Policy Period." (Italics supplied.)

Relator contends that the standard workmen's compensation insurance policy which was issued does not cover the benefits established under L. 1947, c. 616, as amended, for the reasons that the same is unconstitutional and that it is not amendatory of or supplementary to the workmen's compensation law of Minnesota and not a part of it. It contends that this law, which provides special benefits for the employees of public institutions who contract tuberculosis, is completely separate and distinct from the workmen's compensation act and that the two acts are not *in pari materia*.

Relator's assignments of error present the following legal issues for decision:

(1) Is L. 1947, c. 616, as amended by L. 1949, c. 558, constitutional?

(2) Is L. 1947, c. 616, as amended, amendatory of or supplementary to the workmen's compensation law of Minnesota?

(3) Does the standard workmen's compensation insurance policy issued cover the compensation benefits established under L. 1947, c. 616, as amended?

The industrial commission did not pass on the constitutionality of L. 1947, c. 616, as amended, but it did hold that it is a part of or supplementary to the workmen's compensation law and that the standard workmen's compensation insurance policy issued by the relator covers the benefits provided thereunder.

■ In 1943 tuberculosis was made an occupational disease under the workmen's compensation act, M. S. A. 176.01, subd. 15, and 176.66, subd. 3.[2] L. 1947, c. 616, as amended (M. S. A. 251.041 to 251.045) had its origin in L. 1939, c. 116, which provided for treatment, in a public sanatorium at the expense of the state, of employees of sanatoria under the direction, supervision, and control of the state who contracted and became ill from tuberculosis while so employed. It made no mention of the industrial commission and did not provide for the payment of compensation benefits. It was repealed by L. 1941, c. 479, § 3 of which provided that a superintendent should report any tubercular illness of employees so that the report would in turn reach the industrial commission and that the industrial commission would then mail the superintendent of the institution blank forms for a petition to be filled out by the employee claiming the medical and sanatorium treatment and compensation. It further provided that the industrial commission should thereupon set the claim for a hearing and determination in the same manner "as claims of other state employees under the workmen's compensation law are heard and determined." This chapter further provided under § 4 that the industrial commission should also order payment to such employee from the state compensation revolving fund two-thirds of his salary during the period of his disability, not, however, to exceed 65 weeks, and that all such compensation pay-

---

[2]See, Peterson v. State (Operating University Hospitals), 234 Minn. 81, 47 N. W. (2d) 760; Anderson v. Northwestern Hospital, 229 Minn. 546, 40 N. W. (2d) 442; Otten v. University Hospitals, 229 Minn. 488, 40 N. W. (2d) 81.

ments made from the state compensation revolving fund should be reimbursed by the Department of Social Security in the same manner as required of other state departments by law. L. 1941, c. 479, was amended by L. 1945, c. 270, with respect to the section providing for employees in state institutions to be placed in sanatoria, in this particular:

"* * * The industrial commission shall order payment to such employee from the state compensation revolving fund two-thirds of his salary *not to exceed $20 per week* during the period of his disability, not to exceed *125* weeks."

Thereafter these sections were coded in M. S. A. 1945 as §§ 246.29, 251.04, and 251.05.

L. 1947, c. 616, repealed M. S. A. 1945, §§ 246.29, 251.04, and 251.05 and enacted §§ 251.041 to 251.044, which made the following substantial changes: First, the maximums previously placed on the compensation payments by the statute were removed and the amount of compensation was to continue until the employee either was able to resume his previous position or until certified fit for normal work by the medical board of the institution caring for him; second, death benefits totaling $7,500 were provided; third, the compensation payments were to be paid in the manner and out of the funds provided for payment of benefits for such employees under the general provisions of the workmen's compensation law; fourth, the class to be protected was extended to persons employed in all public tax-supported sanatoria.

L. 1947, c. 616, was in turn amended by L. 1949, c. 558, and they were coded as §§ 251.041 to 251.045. Although there was no change as to the amounts of compensation or death payments, the amendment omitted any statement as to the source of these funds. It also extended coverage to employees of publicly owned and operated institutions as well as sanatoria. The compensation provision ended as follows:

"* * * The Industrial Commission shall certify and supervise the payment of such compensation."

There have been no subsequent amendments or additions to the statute.

The procedural steps under §§ 251.042 and 251.043 are as follows: (1) A report of injury is sent to the industrial commission; (2) the industrial commission mails a claim form to the superintendent of the employing institution to be filled out by the injured employee; (3) the industrial commission hears the claim and determines same in the same manner as claims of other employees under the workmen's compensation act are heard and determined; (4) the industrial commission makes findings upon the evidence introduced at the hearing; (5) if the injury is the result of contact with patients or inmates afflicted with tuberculosis or contact with tuberculosis contaminated material in performance of duties, the commission shall order the superintendent of the employing institution to hospitalize the employee in the state or in a county sanatorium and it shall order the payment of compensation to the injured employee; and (6) the industrial commission is required to certify and supervise the payment of such compensation. This procedure reflects a part of the plan and purpose of the legislature to comprehensively and uniformly treat and, insofar as possible, control tuberculosis and its spread. At present the benefits conferred are restricted to those employed in publicly owned and operated institutions as the first step in this program. This legislation was enacted for this class of employee because of the lack of medical specialists and trained lay personnel necessary to operate such public tax-supported institutions. By providing a program to care for and compensate the employees of such publicly owned and operated sanatoria or institutions who contract tuberculosis as a direct result of their employment the legislature supplied the inducement necessary for such institutions to retain old employees and attract prospective employees. The legislature, having in mind that the workmen's compensation act is a remedial statute which has been liberally construed when necessary to effectuate its purposes, enacted the statute here in issue as the vehicle for supplementing the workmen's compensation laws in this particular field.

Relator contends that there are several important differences between the workmen's compensation law and c. 616, as amended, which tend to indicate that said c. 616 is not amendatory of or supplementary to or a part of the workmen's compensation act. It points out that c. 616, as amended, places no limitation on the time within which an employee may bring an action to recover benefits as does the workmen's compensation act, M. S. A. 176.18; that there is no time limit provided within which an employee must give notice to his employer of having contracted tuberculosis, while there is such a time limit under the workmen's compensation act, §§ 176.16 and 176.664; that the benefits provided are much greater than those an employee receives or may receive under the workmen's compensation law; that under the workmen's compensation law the compensation benefits are subject to a maximum of $35 per week pursuant to the 1953 legislative enactment whereas under c. 616, as amended, an employee may receive two-thirds of his regular salary without any maximum provided; and that the death benefits provided by the two acts are different, in that c. 616 provides a death benefit in the sum of $7,500, whereas the death benefit under the workmen's compensation law is $10,000 with an additional $2,500 awarded under special circumstances. Relator alleges another inconsistency between the two laws: c. 616, as amended, provides that medical expenses shall be paid by the Department of Social Security whereas under the workmen's compensation law the private insurer has this obligation. Relator argues that the legislature would hardly have provided a paying agency if it had intended the chapter enacted to be amendatory of or supplementary to the workmen's compensation act which already contained a provision as to who should make payment. Relator contends that the fact that c. 616, as amended, was not codified with the workmen's compensation act and that it provides that the industrial commission shall adjudicate the employee's claim "as claims of other public employees under the workmen's compensation law are heard and determined," is illustrative of and proves the legislature's intention to enact a separate and distinct law from the workmen's compensa-

tion law. Relator argues that, if c. 616, as amended, is not a part of the workmen's compensation act, then the standard workmen's compensation insurance policy issued by it does not cover the benefits of that chapter, since by the terms of that policy coverage is extended only to obligations arising under the terms of the workmen's compensation law.

We are unable to agree with the contentions of the relator. While we do not say that c. 616, as amended, is amendatory of the workmen's compensation act, yet we do come to the conclusion that it is supplementary to, and to that extent a part of, the workmen's compensation act and that the history of this statute from the enactment of L. 1941, c. 479, evidences that very purpose.

Statutes relating to the same subject are presumed to be imbued with the same spirit and to have been passed with deliberation and full knowledge of all existing legislation on the subject and regarded by the lawmakers as being parts of a connected whole.

"Statutes are in pari materia when they relate to same matter or subject even though some are specific and some general and even though they have not been enacted simultaneously and do not refer to each other expressly. Resort may be had to statute[s] in pari materia because all statutes which relate to same subject matter were presumably enacted in accord with general legislative policy and together constitute an harmonious and uniform system of law. Where two acts in pari materia are construed together and one contains provisions omitted from the other, the omitted provisions will be applied in the proceeding under the act not containing such provisions, where not inconsistent with the purpose of the act. * * *

"The rule of in pari materia can be invoked only when the two statutes under consideration relate to the same subject-matter and the same class of actions." 6 Dunnell, Supp. § 8984.

Chapter 616, as amended, contains substantially the same provisions as are contained in L. 1941, c. 479, and brings the same directly within M. S. A. 645.37, which provides:

"When a law is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing law, the earlier law shall be construed as continued in active operation. All rights and liabilities incurred under such earlier law are preserved and may be enforced."

"* * * A reënacted statute should receive the known, settled construction which it had received when previously in force." Wenger v. Wenger, 200 Minn. 436, 440, 274 N. W. 517, 519.[3]

In Heald v. District of Columbia, 254 U. S. 20, 23, 41 S. Ct. 42, 43, 65 L. ed. 106, 111, Mr. Chief Justice White, speaking of the meaning to be given to a statute re-enacted by congress, stated:

"* * * where provisions of a statute had previous to their reënactment a settled significance, that meaning will continue to attach to them in the absence of plain implication to the contrary."

In Wolner v. State Dept. of Social Security, 213 Minn. 96, 5 N. W. (2d) 67, it was held that because the employee-petitioner accepted an appropriation made by L. 1941, c. 537, § 85, the relator in that case was barred from claiming compensation under L. 1941, c. 479. Mr. Justice Holt, speaking for this court in discussing L. 1941, c. 479, made the following statement (213 Minn. 97, 5 N. W. [2d] 67):

"* * * At the time of the hearing she was disabled from tuberculosis, contracted while in the service of the state. L. 1941, c. 479, was approved and took effect April 26, 1941. *It placed employes of the state who had contracted or would thereafter contract tuberculosis under the workmen's compensation act.* By § 4 thereof, employes suffering from tuberculosis so contracted may be placed by the industrial commission in some state or county sanatorium for treatment at the expense of the department of social security. 'The Industrial Commission shall also order payment to such employee from the State Compensation Revolving Fund two-thirds of his sal-

[3]25 R. C. L. 1075, § 297; Bruce v. Sierra, 175 Ala. 517, 57 So. 709, Ann. Cas. 1914D, 125; State v. Stroschein, 99 Minn. 248, 109 N. W. 235; Christgau v. Woodlawn Cemetery Assn. 208 Minn. 263, 273, 293 N. W. 619, 623.

ary during the period of his disability, not, however, to exceed 65 weeks.' " (Italics supplied.)

There was no hesitancy on the part of the court in stating in that case that L. 1941, c. 479, placed employees of the state who had contracted or would thereafter contract tuberculosis under the workmen's compensation act, and the court made the statement as a general proposition at the outset in discussing the facts and the law that followed. No citations to support the statement seem to have been considered necessary and none were added. It may be assumed that the legislature had made itself familiar with the Wolner case when it enacted L. 1945, c. 270, L. 1947, c. 616, and L. 1949, c. 558.

"* * * Not only are statutes presumed to have been passed with deliberation and full knowledge of all existing legislation on the subject, but they are deemed to have been regarded by the law makers as being parts of a connected whole, where they are in pari materia, although considered by the legislature at different times and under distinct and varied aspects of the subject." 6 Dunnell, Supp. § 8984.

Any contention that the legislature enacted a statute providing for the payment of compensation to employees who contract an occupational disease, such as tuberculosis, without making the employer liable for the payment thereof seems to lack merit. In this connection the language of the court in Township of Equality v. Township of Star, 200 Minn. 316, 320, 274 N. W. 219, 221, is apropos:

"To adopt such construction of the statute as defendant contends for 'would result in absurdity, injustice or inconvenience.' As such it 'is to be avoided if the language used will reasonably bear any other construction.' 6 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 8947, and cases cited under note 49."

The sanatorium commission, like county boards, has only such powers as are delegated to it by the legislature. Its authority is the command of the statute, and such command is the limit of its power. The only interest of the employer affected by c. 616, as amended, is its interest in the proper exercise of its official functions.

■ In addition to holding that L. 1947, c. 616, as amended, is supplementary to, and to that extent a part of the workmen's compensation law of Minnesota, we further hold that the standard workmen's compensation insurance policy issued by relator covers the benefits established under c. 616, as amended.

■ Another contention on the part of the relator is that L. 1947, c. 616, as amended, is unconstitutional as "special" legislation in violation of Minn. Const. art 4, § 33, and that as such it is "class" legislation. The relator contends that said statute discriminates against employees of private hospitals or institutions and that, even though it includes all employees of state or public tax-supported hospitals, it is nevertheless "special" legislation and therefore unconstitutional as "class" legislation. The principles of classification applicable to "special" or "class" legislation are identical. State ex rel. Bd. of Commrs. v. Cooley, 56 Minn. 540, 58 N. W. 150.

Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application is not prohibited by either the state or federal constitution if, within the sphere of its operation, it affects alike all persons similarly situated and the classification is not arbitrary. The grounds for. discrimination between persons similarly situated may be slight. The question is primarily for the legislature, and unless a discrimination is manifestly arbitrary and unreasonable it will be sustained. The fact that a statute discriminates in favor of a certain class does not make it arbitrary if the discrimination is founded on a reasonable distinction or if any reasonable state of facts can be conceived to sustain it. The legislature may strike at an evil where it is most felt or where it is most practical to deal with it. The courts are not at liberty to speculate upon the considerations which motivate the legislature or to declare void legislative classification where there is some reason therefor, even though the courts may not hold such reasons in the same high regard as did the legislature.[4]

[4] 3 Dunnell, Dig. (3 ed.) § 16.69; Mathison v. Minneapolis St. Ry. Co. 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412; Loew v. Hagerle Brothers, 226 Minn. 485, 33 N. W. (2d) 598; State v. Pehrson, 205 Minn.

A law, to be general, need not operate alike upon all the inhabitants of the state, or all the cities, or all the villages in the state. It is general when it operates alike upon all the inhabitants, or all the cities, or all the villages of a class. The only practical limitation to the power of the legislature to make any classification is that the classification shall be based upon some reason suggested by necessity or by some difference in the situation and circumstances of the subjects classified suggesting the necessity of different legislation with respect to them.[5]

As stated in State ex rel. Douglas v. Westfall, 85 Minn. 437, 439, 89 N. W. 175, 176, 57 L. R. A. 297:

"* * * It is only when the classification is so manifestly arbitrary as to evince a legislative purpose of evading the provisions of the constitution that the courts may and must declare the classification unconstitutional. In considering the constitutionality of a statute, courts will take judicial notice of all facts relevant to the question."[6]

It cannot be seriously contended that the legislation in question does not affect the right of all persons similarly situated within the sphere of its operation; namely, all employees of public institutions owned and operated by the state, county, and municipalities who contract tuberculosis as a result of contact with patients or inmates afflicted with tuberculosis or contact with tuberculosis contaminated material in the performance of the duties of their

573, 287 N. W. 313, 123 A. L. R. 1045; Eldred v. Div. of Employment and Security, 209 Minn. 58, 295 N. W. 412; Carmichael v. Southern Coal & Coke Co. 301 U. S. 495, 57 S. Ct. 868, 81 L. ed. 1245, 109 A. L. R. 1327; General Mills, Inc. v. Div. of Employment and Security, 224 Minn. 306, 28 N. W. (2d) 847; State ex rel. Equity Farms, Inc. v. Hubbard, 203 Minn. 111, 280 N. W. 9; Thomas v. Housing and Redevelopment Authority of Duluth, 234 Minn. 221, 48 N. W. (2d) 175.

[5]State ex rel. Bd. of Commrs. v. Cooley, 56 Minn. 540, 58 N. W. 150; Hassler v. Engberg, 233 Minn. 487, 48 N. W. (2d) 343; Hamlin v. Ladd, 217 Minn. 249, 14 N. W. (2d) 396; 3 Dunnell, Dig. (3 ed.) §§ 1677, 1679.

[6]Driscoll v. County of Ramsey, 161 Minn. 494, 201 N. W. 945; Town of Kinghurst v. International Lbr. Co. 174 Minn. 305, 219 N. W. 172.

employment. Neither can it be effectively contended that the discrimination in favor of such class of public employees is not founded on a reasonable distinction. In determining the classification, the legislature might well have considered its prior legislation making tuberculosis a special matter of state concern by setting up a unified plan for the control and treatment of tuberculosis. County of Hennepin v. County of Houston, 229 Minn. 418, 39 N. W. (2d) 858.

In the case of Hassler v. Engberg, 233 Minn. 487, 514, 48 N. W. (2d) 343, 359, it is pointed out by the court that:

"* * * We are not here concerned with the question whether all these considerations might have been entirely sound, but only with the question whether such considerations might have afforded a reasonable basis for the action of the legislature. It is our opinion that such matters could have been considered and that under the principles above set forth the act cannot be declared unconstitutional as special legislation."

The classification in Burns v. City of St. Paul, 210 Minn. 217, 297 N. W. 638, requiring retirement of police and firemen in cities of the first class at the age of 65 years, but allowing those who had reached 65 without pension rights to continue in service until their pension rights had matured, subject to rules of the civil service commission, was sustained.

Kellerman v. City of St. Paul, 211 Minn. 351, 1 N. W. (2d) 378, involved the constitutionality of an act making coronary sclerosis an occupational disease of firemen of organized fire departments. Therein the relator contended that the act violated the equal protection clauses of the federal and state constitutions and the prohibition against special legislation found in the state constitution. The language of the court in holding that act constitutional may, with propriety, be applied to the instant case, viz. (211 Minn. 355, 1 N. W. [2d] 380):

"* * * The apparent high percentage of occurrence of coronary sclerosis among firemen demonstrates that the legislature was not arbitrary in providing for them as a class. Relator asserts that

other occupations were shown to be susceptible to coronary sclerosis. The legislature 'is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. As has been said, it may "proceed cautiously, step by step," and "if an evil is specially experienced in a particular branch of business" it is not necessary that the prohibition "should be couched in all-embracing terms." ' State v. Fairmont Creamery Co. 162 Minn. 146, 149, 202 N. W. 714, 716, 42 A. L. R. 548. The statute is undoubtedly constitutional."[7]

The respondent Hennepin County Sanitorium Commission contends that the relator here has no standing to challenge the constitutionality of c. 616, as amended, for the reason that relator is not one of the class against whom the alleged discrimination exists. It is pointed out in C. Thomas Stores Sales System, Inc. v. Spaeth, 209 Minn. 504, 519, 297 N. W. 9, 18, that:

"One who is not discriminated against by a legislative classification does not have an interest entitling him to raise the question of the unconstitutionality of a statute on the ground that it denies equal rights and privileges by discriminating between persons and classes generally or between classes of which he is not a member."

In State v. Hoffman, 159 Minn. 401, 403, 199 N. W. 175, 176, involving the constitutionality of a by-law or ordinance adopted by the town board, the court points out:

"Another objection to the ordinance is that the license it authorizes can be given only to an owner or tenant of real estate in the township who has been a resident thereof for one year. We are not concerned with that argument because defendant is a long-time resident and freeholder of the town. He is in no position, therefore, to object to the ordinance because of its discrimination against non-residents. Whatever the constitutional objections to given legisla-

---

[7]Eldred v. Div. of Employment and Security, 209 Minn. 58, 295 N. W. 412; Carmichael v. Southern Coal & Coke Co. 301 U. S. 495, 57 S. Ct. 868, 81 L. ed. 1245, 109 A. L. R. 1327; Steward Machine Co. v. Davis, 301 U. S. 548, 57 S. Ct. 883, 81 L. ed. 1279, 109 A. L. R. 1293; Mathison v. Minneapolis St. Ry. Co. 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412.

tion may be, litigants not hurt by the provision under attack have no standing in court to urge such objections. Courts will not 'listen to an objection made to the constitutionality of an act by a party whose rights it does not affect.' Cooley, Const. Limitations (7th ed.) 232. Albany County Suprs. v. Stanley, 105 U. S. 305, 26 L. ed. 1044; Clark v. Kansas City, 176 U. S. 114, 20 Sup. Ct. 284, 44 L. ed. 392; 6 R. C. L. 90-91; 12 C. J. 760." See, State v. Casualty Mut. Ins. Co. 213 Minn. 220, 224, 6 N. W. (2d) 800, 802.

In Mesaba Loan Co. v. Sher, 203 Minn. 589, 595, 282 N. W. 823, 827, the court said:

"A party attacking the constitutionality of a statute must show that it affects his rights in an unconstitutional manner. That it so affects the rights of others is no concern of his. He may champion his own, but not the rights of others."

It was also held in the same case that one who is not a member of a class excluded from a statute and whose rights are not affected or prejudiced thereby may not attack the statute upon the grounds that the exclusion is unconstitutional.

One who is not deprived of privilege will not be heard to question the validity of a statute upon the ground that it destroys the privileges of others. State ex rel. Young v. Standard Oil Co. 111 Minn. 85, 101, 126 N. W. 527, 531, and cases cited. Courts should accept an act of the legislature as final and discourage attacks upon it except where necessary to protect the private interests of the individual who is asserting invalidity and who is peculiarly and particularly affected by the act. Bricelyn School Dist. No. 132 v. Board of Co. Commrs. 238 Minn. 63, 55 N. W. (2d) 602.

Tuberculosis is an occupational disease under the workmen's compensation law. Chapter 616, as amended, increases the compensation benefits for the class embraced therein who contract the said occupational disease. No rights of the relator are affected thereby. The increased liability of the employer and its insurer under said statute, insofar as the relator is concerned, is merely a matter of a premium rate commensurate with a risk. M. S. A. 79.21 to 79.27. We are of the opinion that L. 1947, c. 616, as amended by

L. 1949, c. 558, is constitutional and is not violative of Minn. Const. art. 4, § 33, either as special or class legislation.

The decision of the industrial commission is hereby approved. Affirmed.

