# EMMETT F. HASKIN v. COUNTY OF HENNEPIN, GLEN LAKE SANATORIUM, AND ANOTHER.

## 127 N. W. (2d) 522.

### April 10, 1964—No. 39,141.

*Robb, Robb & Van Eps,* for relators.

*Carroll & Perbix,* for respondent.

*Walter F. Mondale,* Attorney General, and *Galen M. Cadle,* Assistant Attorney General, for Department of Public Welfare, amicus curiae.

KNUTSON, CHIEF JUSTICE.

Certiorari to review an award of compensation and hospital and medical benefits by the Industrial Commission.

Petitioner was a pharmacist employed part time by Glen Lake Sanatorium from 1934 to 1951 and full time from 1951 to November 1,

1960. Between December 1960 and March 1961, he was found to be afflicted with an active case of tuberculosis and was hospitalized at Glen Lake Sanatorium until he was discharged in November 1961. He was awarded compensation in the total sum of $4,118.74 for partial and total disability during his period of incapacity, and his employer's insurer was also ordered to pay to the County of Hennepin, Glen Lake Sanatorium, $5,615.83 for medical and hospital expenses.

The questions presented here are whether the commission's finding that petitioner's active tuberculosis was causally connected with his employment is supported by the evidence and whether hospital and medical benefits are payable by employer's insurer.

Prior to the hearing on the claim petition, employer's insurer made a motion that the Department of Public Welfare, State of Minnesota, be joined as an additional party. This motion was denied by the commission. Inasmuch as the liability of the Department of Public Welfare for hospital and medical benefits is directly involved in the proceeding, we are of the opinion that the motion should have been granted. However, the question involves purely a question of law, and we have permitted the Department of Public Welfare to appear here as amicus curiae, so its position is before us on this appeal.

While we do not have the policy of insurance before us, it is conceded by amicus curiae that it was a standard workmen's compensation policy, which provides:

"I.  Coverage A—Workmen's Compensation. To pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law.

"Coverage B—Employers' Liability. To pay on behalf on the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom, sustained in the United States of America, its territories or possessions, or Canada by any employee of the insured arising out of and in the course of his employment by the insured either in operations in a state designated in Item 3 of the declarations or in operations necessary or incidental thereto."

It is the contention of relators that petitioner's disabling tuberculosis

was the result of an endogenous infection which had its origin prior to his employment rather than to an exogenous infection contracted while he was employed by Glen Lake Sanatorium.

As usual, the outcome of the case depends mainly on which of divergent medical opinions the commission was willing to accept as most credible.

The pertinent facts are that petitioner, during his employment, delivered drugs to various parts of the building. He would pass patients in the halls, ride with them on elevators, and encounter them at various other places in the building. X rays of petitioner's chest and lungs were taken in 1934, 1935, 1936, and 1937, all of which appear to be negative. In 1937, petitioner reacted positively to a Mantoux test, indicating that at some time prior thereto he had been infected with tubercle bacilli. It was impossible to tell how long prior to 1937 he had been a positive tuberculin reactor to the Mantoux test. Lesions of his lungs were first visible on the 1941 X rays, and, although he was not positive, Dr. Ejvind Fenger, who was called by petitioner, was of the opinion that the lesions appearing on the 1941 X rays probably were tuberculous lesions. Dr. Fenger was unable to tell whether these lesions represented adult-type lesions or childhood lesions, but he believed that petitioner may have been infected by tubercle bacilli in childhood. A significant change occurred in December 1960, and it was Dr. Fenger's opinion that the tubercle bacilli may have been in the area before July 7, 1960, but that it was between that date and December 14, 1960, that a newly appearing lesion developed sufficiently to be visible on X rays. While Dr. Fenger conceded that it was possible that the active tuberculosis discovered in December 1960 had its origin prior to petitioner's employment, he was of the opinion that the active tuberculosis had its origin from contacts with patients during his period of employment.

Dr. J. A. Myers, who was called by relators, was of the opinion that the lesions of the lungs shown by the 1941 X ray were lesions of the adult type and that the tuberculosis discovered in 1960 had its

origin in the tubercle bacilli shown by the positive Mantoux test in 1937 and the lesions discovered in 1941. In other words, it was his opinion that the active tuberculosis was the result of a breakthrough of an endogenous infection rather than the exposure to tubercle bacilli during petitioner's employment.

■ This phase of the case rests largely on a determination of whether petitioner's active tuberculosis in 1960 resulted from the liberation of capsulated bacilli imprisoned from a time prior to his employment or from the invasion of germs entering his body as a result of contacts with patients during his employment. Determination of this question, of necessity, must rest largely on the acceptance of one of two divergent opinions of doctors experienced in this field. No one can demonstrate beyond dispute which of these two possibilities caused the active tuberculosis. The necessary inference to be drawn must be based on the factfinder's belief that the opinion of one doctor is more credible and more probable than the other.

In Golob v. Buckingham Hotel, 244 Minn. 301, 304, 69 N. W. (2d) 636, 639, we said:

"* * * [U]ntil the time comes when medical knowledge has progressed to such a point that experts in the field of medicine can agree, causal relation in determining compensable injury or disease will have to remain in the province of the trier of fact. Where qualified medical witnesses differ as they do here, it ordinarily is not for us on appeal to say that one is so eminently right and the other so clearly wrong that the fact finder was obliged to accept the opinion of one and discard the opinion of the other. The determination of this question is like the determination of any other question of fact, and it must depend to a large extent upon the credibility attached by the trier of facts to the opinion and testimony of the various witnesses who are expressing their opinions."[1]

In Hush v. Ancker Hospital, 245 Minn. 22, 27, 70 N. W. (2d) 850, 853, we said:

---

[1]See, also, Yureko v. Prospect Foundry Co. 262 Minn. 480, 115 N. W (2d) 477.

"* * * It would be placing an almost impossible burden on a person who contracted tuberculosis while employed in a hospital to require such person to prove that she contracted the disease by contact with a precise person or persons. It should be enough when she goes as far as to show the presence of tubercular patients in the place where she worked and the necessary contact with such patients. When, coupled with such showing, doctors familiar with the disease state that in their opinion the disease was contracted while so employed, it should be sufficient under the rules which we have frequently announced so that the findings of the industrial commission should be sustained."

That Dr. Fenger was a qualified expert in this field no one denies. That he could have an honest difference of opinion with Dr. Myers as to the causal relation between the active tuberculosis discovered in 1960 and the employment of petitioner is also apparent. The commission chose to accept the opinion of Dr. Fenger, and on the basis of the evidence in the case this finding clearly is sutained by the evidence in the light of our former decisions.

The provisions under which the award was made contain the following exclusionary section, Minn. St. 251.044:

"Laws 1949, Chapter 558, shall not be construed to apply in the case of employees known to have had tuberculosis as demonstrated by tuberculous lesions of the adult type or by demonstration of the germs of tuberculosis in such employee's secretions or excretions previous to or at the time of employment in said institutions. * * *"

Dr. Fenger testified that in his opinion the lesions found to exist in petitioner at an early date were not of the adult type. Dr. Myers was of the opposite opinion. We need say nothing more than that it was for the commission to determine who was most probably right.

■ A more difficult question arises as to the payment of hospital and medical expenses by employer's insurer. Petitioner undoubtedly was eligible for benefits under the occupational disease section of our Workmen's Compensation Act. If he had been allowed benefits under those statutes, employer's insurer clearly would be liable for medical and hospital expenses. The difficulty arises by virtue of the fact that compensa-

26

tion in this case was allowed under Minn. St. 251.041 to 251.045, which relate to the compensation to be awarded to persons employed in county or state tuberculosis sanatoriums.

The history and development of §§ 251.041 to 251.045 are discussed in sufficient detail in Kaljuste v. Hennepin County Sanatorium Comm. 240 Minn. 407, 61 N. W. (2d) 757. We there held that these statutory provisions are supplementary to our workmen's compensation laws and that an employer's insurer is liable for *compensation* payable under these provisions. The case did not involve liability for medical and hospital benefits since the policy issued in that case expressly excluded such liability. We there said (240 Minn. 409, 61 N. W. [2d] 759):

"* * * The controversy is over whether relator is responsible for the compensation awarded. There is no dispute regarding the award of hospital and medical benefits against the employer and the State of Minnesota, Department of Social Security,[2] since relator did not underwrite these items in the standard workmen's compensation insurance policy which it issued covering this employee. The insurance policy covers only *compensation* awarded within the framework of the workmen's compensation act."

The pertinent statute is § 251.043, subd. 1 of which reads:

"* * * There shall be paid to the institution where such employee may be received, the same fee for the maintenance and care of such person as is received by such institution for the maintenance and care of a nonresident patient. If the employee worked in a state tuberculosis sanatorium or in a county tuberculosis sanatorium, payment for such care shall be made by the department of social security out of funds heretofore or hereafter appropriated for aid to or maintenance of county tuberculosis sanatoria. * * * The industrial commission shall order payment to such employee of two-thirds of his salary during the period of disability and until the employee is able to resume his previous position or until the medical board of the institution where the employee is or has been hospitalized shall certify that such employee is able to pursue, without injury, some other normal work or occupation. * * *

---

[2]Now Department of Public Welfare.

The industrial commission shall certify and supervise the payment of such compensation."

We have held that §§ 251.041 to 251.045 are supplementary to and a part of the workmen's compensation law in so far as compensation benefits are concerned.[3] Under these provisions the benefits are greater than would be allowed under c. 176. As we stated in the Kaljuste case, the purpose of the act undoubtedly was to make more attractive this dangerous type of work so that the publicly owned and operated institutions could obtain and retain the necessary employees. The state, appearing as amicus curiae, argues that medical benefits are to be paid by the insurer by virtue of c. 176. It seems to us that, while both provisions are available for the benefit of an employee, an award and the liability must be based upon either one statute or the other. We can hardly make an award for compensation under the liberal provisions of § 251.043 and for medical and hospital expenses under c. 176.

It is obvious that a distinction is made between payment of compensation (which we held the employer and its insurer liable to pay in the Kaljuste case) and payment of hospital and medical benefits. As to the latter, the statute expressly provides that they shall be paid by the Department of Public Welfare. As to the former, there is no such provision, but liability rests on the employer and its insurer.

These statutory provisions have their origin in L. 1947, c. 616. Provision for payment of medical and hospital expenses was the same in the original act as it is now. With respect to payment of compensation, however, the original act provided:

"* * * Provision for payment of all compensation provided shall be made in the manner and out of the funds provided for payment of benefits for such employees under the general provisions of the workmen's compensation law."

The act was amended by L. 1949, c. 558, by which the provision for payment of compensation quoted above was eliminated and the

---

[3]Kaljuste v. Hennepin County Sanatorium Comm. 240 Minn. 407, 61 N. W. (2d) 757.

following provision was substituted in lieu thereof: "The industrial commission shall certify and supervise the payment of such compensation." We recognized this change in the Kaljuste case, where we said (240 Minn. 411, 61 N. W. [2d] 761):

"* * * Although there was no change [by L. 1949, c. 558] as to the amounts of compensation or death payments, the amendment omitted any statement as to the source of these funds."

It was partly due to that fact that we concluded that the employer and its insurer thereafter were liable for payment of compensation. The failure to change the provision for payment of hospital and medical benefits must lead to the conclusion that they still were to be paid by the Department of Social Security (now Public Welfare) as originally provided. In the Kaljuste case we said (240 Minn. 416, 61 N. W. [2d] 763):

"Any contention that the legislature enacted a statute providing for the payment of compensation to employees who contract an occupational disease, such as tuberculosis, without making the employer liable for the payment thereof seems to lack merit."

We then held that the standard workmen's compensation insurance policy covers benefits established under L. 1947, c. 616.

However, it must again be kept in mind that we were dealing not with medical and hospital benefits but with compensation payments. The scope of any opinion by this court is limited to the facts and issues involved in the decision, and anything said in excess of deciding these issues is pure dictum. While there are some statements, if taken out of context, in that opinion that might support the position of amicus curiae, when read as a whole it is clear that we were not dealing with the problem which confronts us now. Clearly, if the employer here were self-insured, the express language of § 251.043 would exempt it from payment of medical and hospital expenses. The insurance policy is an indemnity policy under which the insurer is obligated to pay that which the insured would be liable for. Inasmuch as the county would not be liable under the statute for these payments, it must follow that the insurer is subject to no greater liability. It is not for us

to write into the statute something that is not there. We find no ambiguity in the statute, and if there is to be a change so that an employer under these facts becomes liable for hospital and medical benefits if it procures insurance, that change should be made by the legislature.

Amicus curiae argues that employer's insurer should not be relieved from payment of medical and hospital expenses required under § 176.135 because Hennepin County, as employer of the employee, had the prime obligation under that section to furnish hospitalization and medical supplies. In its brief, amicus curiae says:

"* * * To protect itself under this obligation they contracted with the Insurer-Relator 'to pay promptly when due compensation and other benefits required of the insured.' Hennepin County could have looked to the State of Minnesota under M.S. 251.043 to provide payment for such care out of the county tuberculosis sanatoria funds, if such moneys were available in that fund as appropriated by the state legislature. Hennepin County, for whatever reasons they may have had, covered their obligation by contracting with the Insurer-Relator."

The fallacy of this argument is that Hennepin County contracted with the insurer only to pay those obligations which it was obligated to pay. To be sure, if compensation had been awarded under c. 176, the insurer would also be liable for medical and hospital benefits under § 176.135, but, when the greatly enlarged compensation was awarded under § 251.043, the provisions respecting payment of medical and hospital benefits must also be enforced under that section, and the insurer here has not agreed to pay these medical and hospital benefits which Hennepin County is not obligated to pay. It would seem that, inasmuch as § 251.041, et seq., have been enacted for the benefit of the employee, he should be permitted to choose whether to proceed under these sections or under c. 176, but, having so chosen, the liability should be determined by the act under which the employee proceeds. If the employee proceeds under § 251.041, et seq., the insurer is obligated to pay the enlarged compensation but is relieved from paying the hospital and medical benefits. If, on the other hand, the reduced payments provided by c. 176 are made the basis of the award, the

insurer is obligated to pay the hospital and medical benefits. There is another reason why this must be so. The insurer has not contracted to insure the Department of Public Welfare. This contract is exclusively with Hennepin County and is limited to paying those obligations which the county in the operation of its hospital is obligated to pay.

The decision of the Industrial Commission is affirmed as to the compensation awarded the employee and reversed as to the medical and hospital expenses awarded against employer's insurer.

Employee is allowed $250 attorneys' fees.