E.T.O., INC., d.b.a. "Fergie's Bar",
petitioner, Respondent,

v.

TOWN OF MARION, et al.,
Respondents,

Wendell Kuehn, et al., Appellants.

No. C5–84–1234.

Court of Appeals of Minnesota.

Jan. 15, 1985.

Review Granted April 11, 1985.

Terence L. Maus, Rochester, for E.T.O., Inc.

West, Gowan & McIntosh, Rochester, for Town of Marion.

Dingle, Suk, Wendland & Walters, Rochester, for appellants.

Heard, considered and decided by the court en banc, consisting of POPOVICH, C.J., and PARKER, FOLEY, WOZNIAK, LANSING, FORSBERG and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellants Wendell Kuehn and Mary Blomgren appeal from a judgment and writ of mandamus of the trial court. The court held that respondent Marion Town Board's rejection of the application of respondent E.T.O., Inc., d.b.a. "Fergie's Bar" for renewal of an on-sale intoxicating liquor license was void and without legal effect. The trial court also required the Town Board of Marion to meet and reconsider Fergie's application but prohibiting appellant Wendell Kuehn, as a member of the Town Board, from voting on the application. We reverse and remand.

## FACTS

Respondent E.T.O., Inc. owns and operates "Fergie's Bar" in Marion Township, Olmsted County. In July 1982, Fergie's Bar was issued an on-sale intoxicating liquor license by the Olmsted County Board of Commissioners, even though the license application had not been first submitted to and approved by the Marion Town Board, as required by Minn.Stat. § 340.11, subd. 10(2) (1982) (reprinted *infra* n. 1). The license was evidently issued pursuant to a prior commitment made by the County board conditioned upon Fergie's remodeling its business to comply with County building and plumbing codes. On December 21, 1982, the license was renewed by the Olmsted County Board after it had been approved by the Marion Town Board. At these meetings of the Marion Town Board and the Olmsted County Board of Commissioners, appellant Kuehn claimed that his 53 acres across the county road from Fergie's Bar had been devalued by $100,000 because of the presence of Fergie's Bar, and, therefore, the application should be rejected.

On March 8, 1983, Kuehn was elected to a three-year term on the Marion Town Board after campaigning on his opposition to Fergie's Bar. Following Kuehn's election, two landowners in the vicinity of Fergie's Bar petitioned the Marion Town Board to reduce the assessed market value of their properties based upon the opening of Fergie's Bar. The board, including Kuehn, agreed to a 20% reduction. Kuehn then went before the board and asked to have his total property valuation reduced because of his land's proximity to Fergie's Bar. The other two members of the board agreed to a 20% reduction of two lots.

In September 1983, the Burr Oak School building, which lies within 1,500 feet of Fergie's Bar and was not in use as a public school at the time of the initial issuance of a liquor license to Fergies, was re-activated and put into use as the Rochester Area Vocational and Technical Institute (AVTI). The record does not disclose whether the AVTI is located within the limits of any municipality.

On November 9, 1983, Fergie's Bar applied for renewal of its on-sale intoxicating liquor license for 1984. The Town Board rejected the application by a 2–1 vote on December 6, 1983, with Kuehn in the majority.

Fergie's Bar then petitioned the Olmsted County District Court for a Writ of Mandamus directing the County Board to renew the on-sale intoxicating liquor license. The court issued an alternative Writ of Mandamus, directing the Town Board to take a new vote on the renewal application of Fergie's Bar without the participation of Kuehn. Fergie's Bar also requested and was granted a temporary injunction allowing the bar to remain open until a final decision was made on the issues before the court.

The Town Board then moved for summary judgment based upon Minn.Stat. § 340.-14, subd. 3(7) (1982), which provides that no intoxicating liquor license may be issued to

a location within 1,500 feet of a public school outside of a municipality. Fergie's countered with a motion for summary judgment, claiming Kuehn, with his substantial financial stake in the outcome of the licensing decision, should have been precluded from participating in that decision. Their reasoning was a removal of Kuehn would leave a 1–1 vote on renewal which, in Fergie's opinion, was presumptive support of the application because the board failed to adopt a resolution indicating its opposition. Conversely, the Board claims a 1–1 vote means no license because there must be a town board resolution indicating its support for the license grant. Minn.Stat. § 340.11, subd. 10(2) (1982) [1].

The trial court denied the Board's summary judgment motion on the grounds that all of Olmsted County was a municipality under Section 340.07, subd. 11 and the 1500 foot prohibition didn't apply. The court subsequently held that Kuehn had such a self-interest in the outcome of the town vote on the license application so as to make the town action void and ordered the town board to reconsider Fergie's application without Kuehn's participation.

The Town Board's motion to vacate the judgment was denied on June 15, 1984. The Board appeals.

### ISSUES

For purposes of clarity and brevity, the issues will be identified as they are addressed in the opinion.

### ANALYSIS

### I

■ The first issue is raised by Fergie's claim that the 1500 foot prohibition is of no effect because all of Olmsted County is a municipality under section 340.07, subd. 11, which defines a "municipality" as including "a county which is specifically authorized by law to issue an on-sale license." This interpretation would allow the operation of on-sale intoxicating liquor establishments anywhere in Olmsted County without regard to their proximity to public schools. The statute must be read as a whole for "[s]tatutes relating to the same subject are presumed to be imbued with the same spirit and to have been passed with deliberation and full knowledge of all existing legislation on the subject and regarded by the lawmakers as being parts of a connected whole." *Kaljuste v. Hennepin County Sanitorium Commission*, 240 Minn. 407, 414, 61 N.W.2d 757, 762 (1953). The legislature substantially recodified the Intoxicating Liquor Act in 1967 but continued section 340.14, subd. 3(7) restrictions regarding public schools. Although the definitions of municipality were changed, the changes obviously applied to the authority to issue licenses and related matters and without intent to void the protective sections regarding public schools. We therefore hold that the term "municipality" for the purposes of Minn.Stat. § 340.14, subd. 3(7) is a "city", however organized.

The question of whether the AVTI is a public school is raised, not as a specific issue, but as ancillary to resolution of the main issue. The trial court made no findings on whether AVTI is a "public school" and whether it lies, within or outside a "city". Such findings are necessary for determination of the issues presented here and the trial court may receive such additional evidence as is required to properly resolve these questions.

---

1. The pertinent language in the statute reads as follows:

   No premises located in a town may be licensed by the county board unless a resolution of the town board of supervisors indicating its support for the granting of the license is filed with the application for the license. If the town board of supervisors refuses or fails to adopt a resolution indicating its opposition within 30 days after receiving notice of the application, it shall be presumed that it supports the application, and the premises may be licensed.

   Minn.Stat. § 340.11, subd. 10(2) (1982).

   The purpose of the statutory language is to require some definitive action by the Board. It may either affirm or reject by resolution. A tie vote is a failure to affirm or reject. Failure of both creates a presumption of support for the application. Fergie's interpretation is correct.

## II

■ The next issue is whether the statutory prohibition against the sale of intoxicating liquor within 1500 feet of a public school applies to an on-sale business licensed and in operation prior to the opening and operation of the school. There is no question that Fergie's "pre-dated" the opening of AVTI and "post-dated" the 1967 enactment of § 340.14, subd. 3(9) (1982) which provides:

The restrictions imposed by this subdivision shall not apply to any manufacturer or wholesaler of intoxicating liquor or to a drug store or *to any person lawfully licensed to sell intoxicating liquor immediately prior to the enactment of this subdivision.*

*Id.* (emphasis added). The statute was evidently designed to protect existing liquor sellers from confiscation of an ongoing license. Fergie's Bar, when it applied for its license in 1981, was placed on notice of not only this particular statutory restriction but, in addition, that the school district owned land within 1500 feet of Fergie's. In fact, there was an existing building on that land that had been utilized for school purposes but was vacant when Fergie's received its license. Under these facts, Fergie's cannot claim an unconstitutional confiscation of a vested property interest by arguing that his license preceded the school.

■ In addition, a license to sell liquor confers upon the licensee the right to engage in the licensed business only for the term specified in the license. "A prior expired license is *functus officio* and confers no rights upon the licensee named therein, except in certain cases where by statute it entitles him to a renewal upon compliance with specific conditions." *State ex rel. Interstate Air-Parts, Inc. v. Minneapolis-St. Paul Metropolitan Airports Commission,* 223 Minn. 175, 187, 25 N.W.2d 718, 726 (1947); *See Paron v. City of Shakopee,* 226 Minn. 222, 229–30, 32 N.W.2d 603, 608 (1948).

In this case, there is no claim of statutory renewal rights. Fergie's application for renewal of its on-sale intoxicating liquor license stands upon the same basis as if it had never been issued.

## III

■ The third issue is whether the statutory prohibition on the sale of intoxicating liquor within 1500 feet of a public school is unconstitutionally vague. Fergie's Bar claims section 340.07, subd. 11 doesn't give adequate notice of where and to whom the 1500 foot restriction applies. The statute indicates the manner in which the 1500 feet is to be measured as applied to a state university. It makes no reference, however, to a public school. A reasonable interpretation is that the same form of measurement should be applied in the case of a public school. Any additional clarification should be accomplished through legislative action. We find the statute to be sufficiently clear.

## IV

■ The fourth issue is whether section 340.14 unconstitutionally distinguishes between liquor licensees in operation within a municipality and those operating outside a municipality. Fergie's Bar asserts that the locational restriction contained in subdivision 3(7) violates the Fourteenth Amendment requirement of equal protection under the laws in that the restriction applies without rational justification only to liquor sellers located outside of a city.

In *Nelson v. State Department of Natural Resources,* 305 N.W.2d 317 (Minn. 1981), the supreme court set forth the equal protection test:

To survive challenge, a classification must apply uniformly to all those similarly situated; be necessitated by genuine and substantial distinctions between the two groups; and effectuate the purpose of the law.

*Id.* at 319. This act, like every legislative enactment, comes to the courts with a presumption in favor of its constitutionality. *Klicker v. State,* 293 Minn. 149, 152, 197 N.W.2d 434, 436 (1972).

■ We believe section 340.07 clearly meets the requirements of equal protection. All liquor establishments which lie outside of a city are treated alike, as are all those within city limits. There is a "genuine and substantial" distinction between those situations in that those establishments located within a city are generally more closely supervised and controlled than the establishments located in rural areas. Additionally, the two classifications take into consideration factors such as population density, availability of local law enforcement and geographic area.

## V

■ Fergie's Bar also raises the question of whether a town board supervisor has a conflict of interest as would prohibit him from voting on the issuance of an on-sale liquor license when he owns property that may be devalued as a result of the existence of such license.

The trial court found that Kuehn had such a personal financial stake in the outcome of the licensing decision as to constitute a conflict of interest requiring his removal from participation in the town board vote on license issuances. This issue was addressed by our supreme court in *Lenz v. Coon Creek Watershed District*, 278 Minn. 1, 153 N.W.2d 209 (1967) as follows:

> The purpose behind the creation of a rule which would disqualify public officials from participating in proceedings in a decision-making capacity when they have a direct interest in its outcome is to ensure that their decision will not be an arbitrary reflection of their own selfish interests. There is no settled general rule as to whether such an interest will disqualify an official. Each case must be decided on the particular facts present. Among the relevant factors that should be considered in making this determination are: (1) The nature of the decision being made; (2) the nature of the pecuniary interest; (3) the number of officials making the decision who are interested; (4) the need, if any, to have interested persons make the decision; and (5) the

other means available, if any, such as the opportunity for review, that serve to insure that the officials will not act arbitrarily to further their selfish interests.

*Id.* at 15, 153 N.W.2d at 219.

The proximity of supervisor Kuehn's property and his declared pecuniary interest in the outcome of the license renewal create an interest that is separate from the generalized interest of the citizens of Marion Township. This conflict of interest could properly have been handled by Kuehn's withdrawal from discussion and voting. However, the extent of his pecuniary interest is uncertain, he is not involved in a direct payment under a contract, lease or sale, and he apparently represents the attitudes of a substantial segment of the citizens of the township by virtue of his election to the board after campaigning on this issue. Disqualifying Kuehn's vote would then leave a tie vote creating a statutory presumption in favor of the issuance of the renewal and require removal of the matter to the county board, under Minn. Stat. § 340.11. This result is a reversal of the expressed will of the township residents expressed through their representative, Kuehn. For these reasons and under the analysis set forth in *Lenz*, we will allow the vote to stand.

However, any personal interest Kuehn may have in the license is still a relevant factor in determining whether the board's action was arbitrary when it rejected the renewal of Fergie's license. *Id.* at 16, 153 N.W.2d at 220.

As a safeguard against any self-interest that may prejudice the conduct of the town board, there are other procedural safeguards which provide the opportunity for review to insure a town board will not act arbitrarily. *Id.* E.T.O. utilized that safeguard in its appeal to the district court.

## DECISION

In view of our ruling on the propriety of Kuehn's vote, summary judgment was improper. The trial court should make specific findings on whether (1) the Rochester Area Vocational Technical Institute is a

public school within the meaning and intent of Minn.Stat. § 340.14, subd. 3(7), and (2) whether the school lies outside any municipality as herein defined. If the court so finds, then it must direct the Town Board to deny the application renewal because the parties have already stipulated that the AVTI lies within 1500 feet of Fergie's Bar and Minn.Stat. § 340.14, subd. 3(7) (1982) specifically states that no intoxicating liquor shall be sold "within 1500 feet of any public school outside of a municipality * *."

If the court finds the AVTI is not a public school within the meaning and intent of Minn.Stat. § 340.14, subd. 3(7), or that the school lies within the limits of a municipality, then the court shall determine and make specific findings on whether the action of the Town Board, in denying the license renewal, was arbitrary and capricious. The court may include, in its consideration, any interest Kuehn had in the license issuance. If the trial court finds that the Town Board acted in an arbitrary and capricious manner, then it shall, by mandamus, require the Board to grant Fergie's application for license renewal.

Reversed and remanded.

WOZNIAK, Judge, dissenting.

I respectfully dissent. There exists no factual determination to be resolved, but only questions of law which this court can and should resolve in the interest of judicial economy. I would affirm the trial court pursuant to directions as contained herein.

## ADDITIONAL FACTS

On December 15, 1981, incorporators of E.T.O., d/b/a "Fergie's Bar," appeared before the County Board of Olmsted County to advise it of their plans to remodel and renovate the subject property upon condition that the Board indicate its willingness to approve a liquor license at this location. The County Board voted in favor of an intent to issue the license when all requirements were met.

In reliance thereon, $85,000 was expended to remodel and renovate the building to comply with county building and plumbing codes. Fergie's Bar was issued a license by the Board in July 1982.

In December 1982, E.T.O. applied for renewal of the license before the Town Board and County Board which both granted for the 1983 calendar year. Denial by the Town Board for renewal of the license for calendar year 1984 precipitated this lawsuit.

## ANALYSIS

### I. VESTED INTEREST

As an inducing precondition to the County's approval of its original liquor license, Fergie's Bar did expend $85,000 to improve the premises and bring its building in compliance with the County's building and plumbing codes. It had been operating for 1½ years, and under these facts Fergie's Bar had a vested property interest in its license.

A recent Minnesota case involving the renewal of an asphalt license recognizes that:

> Plaintiff here has more than a mere expectancy or abstract hope of license renewal; it has a legitimate claim of entitlement to its license. The investment necessary to carry on an asphalt manufacturing business could not be made unless there were an understanding that operations could continue from year to year. A shutdown of the plant would cause plaintiff a "grievous loss." Moreover, the City and State, by requesting or requiring plaintiff to expend its funds on proper equipment, have strengthened the natural assumption that once compliance had been achieved, a license would surely be forthcoming. It requires no extended discussion to conclude that the rules defining plaintiff's interest in its license do, as a matter of social and economic reality, create a property right.

*Trumbull Division Owens-Corning Fiberglass Corporation v. City of Minneapolis*, 445 F.Supp. 911, 916 (D.Minn.1978), (citations omitted). The same rationale applies

to the renewal of liquor licenses. *See Katris v. City of Waukegan*, 498 F.Supp. 48, 53 (N.D.Ill.1980); *Misurelli v. City of Racine*, 346 F.Supp. 43 (E.D.Wis.1972) (vacated and remanded on other grounds); *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Hornsby v. Allen*, 326 F.2d 605 (5th Cir.1964); *see also Federal Distillers, Inc. v. State*, 304 Minn. 28, 40, 229 N.W.2d 144, 154–155 (1975) (the Twenty-First Amendment does not empower state to invade equal protection or due process rights). In view of Fergie's investment and history of operation, it had a legitimate claim to renewal of its license, absent a finding of a violation of any statute or ordinance pertaining to alcoholic beverages, parking, or other law or regulation; or a violation of any terms, provisions, or conditions of its liquor license.

## II.

### DUE PROCESS

Fergie's property interest must be safeguarded by due process. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). One elementary requirement of due process is that a licensee is entitled to a fair hearing. *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed.2d 942 (1955); *Hymanson v. City of Saint Paul*, 329 N.W.2d 324, 329 (Minn. 1983) (Justice Scott dissenting). The hearing is not fair when the decisionmaker has a conflict of interest. *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (pecuniary interest); *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) (pecuniary interest). Here Councilman Kuehn had a direct financial stake in the voting on Fergie's Bar.

As the majority stated: "He claims his 53 acres across the county road from Fergie's Bar had been devalued by $100,000 because of the presence of Fergie's Bar." This was not disputed.

Such a claim disqualifies Councilman Kuehn even if his vote would not constitute the majority. *Cinderella Career and Finishing Schools, Inc. v. Federal Trade Commission*, 425 F.2d 583, 592 (D.C.Cir. 1970). Therefore, his participation in the license hearing voids the result. *Gibson.*

The majority relies on *Lenz v. Coon Creek Watershed District*, 278 Minn. 1, 153 N.W.2d 209 (1967) in finding Kuehn's personal financial interest did not disqualify him from taking part in the decision.

The majority quoted the analysis and five factors set forth in *Lenz*, and repeated in *Township Board of Lake Valley Township, Traverse County v. Lewis*, 305 Minn. 488, 234 N.W.2d 815 (1975), discussed hereafter, and in Opinion 59a–32 of the Minnesota Attorney General, dated September 11, 1978. The issues presented to the Attorney General and addressed in his opinion were stated as follows:

### QUESTION ONE

Is a rezoning, by a city council, of property owned by a member of the council, precluded by the prohibitions of Minn. Stat. § 412.311, or § 471.87.

### QUESTION TWO

Is the council precluded from acting upon proposed rezoning where a council member has been employed as an architect or planner for the persons seeking the rezoning?

59a Op.Atty.Gen. 32 (1978).

The statutes listed in Question One are those specifically prohibiting Minnesota's public officers from taking part in their official capacities in any sale, lease, or contract in which they have personal financial interests. The interested officeholder in the case presented to the Attorney General had not taken part in any decision on the zoning of his property. The issue was whether or not the interested officeholder's fellow council members, who had no financial interest in the rezoning, could validly act on the matter. The Attorney General found that a city council could rezone the property of one of its members without violating the above-listed statutes, but in doing so stated as follows:

Thus, it is our opinion that Minn.Stat. § 471.87 does not operate to prohibit enactment or amendment of a zoning ordinance which affects property of a council member. *Substantial self-interest by a council member may, however, disqualify the member from participation in the council proceedings involving the rezoning. Participation by such an interested member may be cause for invalidation of the action.* See generally, Ops.Atty.Gen., 477b–34, June 19, 1967, and 396g–16, Oct. 15, 1957 (copies enclosed); Rathkopf, *The Law of Planning and Zoning*, § 22.03; 4 McQuillin, *Municipal Corporations*, §§ 13.35, 13.35a.

*Id.* (emphasis added).

After quoting the five factors set out by the Supreme Court in the *Lenz* decision, the Attorney General stated as follows:

These standards would, in our view, *preclude the participation by a member in consideration of a zoning ordinance of narrow applicability affecting property of the member,* such as appears to be the situation described in the facts presented.

*Id.* (emphasis added).

In response to Question Two, the Attorney General stated as follows:

In our view, the response to Question One applies whether the interest of the council member in the council's action stems from property ownership or from an employment relationship with interested parties. *Thus, the interest in council action, while not directly proscribed by the terms of section 471.87, would, in many circumstances, preclude participation by the interested member in the action of the council.* Where the council member in his private capacity has been involved in preparation of the specific proposal upon which council action is contemplated the considerations set forth in *Lenz v. Coon Creek Watershed District, supra,* would dictate that *such a member would be dis-*

*qualified from acting in his official capacity upon the proposal.*

*Id.* (emphasis added).

It is clear that conflicts of interest "must be decided on the basis of the particular facts present." Both the *Lenz* and *Lewis* decisions, as well as the opinion of the Attorney General cited above, implicitly acknowledge that the rule disqualifying public officials from acting in matters in which they have a significant personal interest is not based solely in statute, but rests in the common law. In neither *Lenz* nor *Lewis* did the court find a sufficiently *significant personal interest* in the outcome of the public body's decision to disqualify an officeholder from participation and invalidate the decision.

Here, a very different factual situation is addressed than existed in *Lenz*. *Lenz* involved a watershed district board ordering 27.1 miles of improvement to a drainage channel, an improvement which would alleviate periodic flooding, reduce damage to roads and bridges, improve outlets for county ditches, provide discharge from a game refuge, drain agricultural land, and accomodate storm sewer systems for two cities. *Id.* 278 Minn. at 3, 153 N.W.2d at 212. Landowners opposing the improvement charged that the watershed board's action was invalid because four of five board members "owned land affected and benefitted by the proposed improvement." *Id.* at 14, 153 N.W.2d at 219. The Minnesota Supreme Court found that this fact did not invalidate the board's order, and in the *Lewis* case succinctly explained the reason for this holding:

[B]ecause there was a good chance that any large improvement would necessarily involve land owned by some of the managers, and because procedural safeguards, including the availability of appeal to district court, were available, we held that there was not sufficient need to disqualify those officials from acting.

*Lewis,* 305 Minn. at 493–494, 234 N.W.2d at 819.

This is not a case of a public improvement conferring a general benefit upon a

great many citizens, board members necessarily included. In this case, the interested public official who cast the deciding vote to oppose—and, in effect, to deny—the liquor license stood to personally gain at least $100,000 by the closing of Fergie's Bar, due to the unique fact that his development property lies directly across the road. There can be little doubt he possessed a significant personal interest.

It cannot be argued convincingly that all Marion Township residents are necessarily "affected" by or "interested" in the Fergie's Bar licensure to bring these facts within the ambit of *Lenz*. The decision on the fate of Fergie's Bar has no wide impact even remotely similar to the broad effects of a 27.1 mile drainage improvement project designed to stop flooding, reduce damage to roads and bridges, drain farmland, and provide two cities with storm sewer systems. Fergie's Bar is, after all, one small business in the approximately 34.5 square mile area of Marion Township.

A resident may be "interested," but the question to resolve is the significant personal interest which created the conflict and which denies due process because of the denial of a fair hearing as enunciated by *Tumey* and *Gibson* and implicit in *Lenz* and *Lewis*.

It must be further noted that *Lenz* was decided prior to *Gibson*, which focuses on personal pecuniary bias as disqualifying.

### III.

### NONCONFORMING USE

Prior to granting Fergie's Bar a license, the Burr Oak School building had been *permanently* closed by formal resolution. Fergie's had been operating for more than one year before the building was taken over by the Rochester Area Vocational and Technical Institute. By that time, Fergie's owners had invested substantial sums in operating the bar; the bar had a recognized property interest. *Trumbull.* By reason of the institute's moving to within 1500 feet of Fergie's, the bar became a nonconforming use. It "must either be

permitted to remain or be eliminated by use of eminent domain." *County of Freeborn v. Claussen*, 295 Minn. 96, 99, 203 N.W.2d 323, 325 (1972).

For the above reasons, I would affirm the District Court. The Township may reconsider Fergie's license application in a hearing where Kuehn is not entitled to vote. If it decides not to continue Fergie's license, it must proceed by eminent domain.

PARKER, Judge.

I join in the dissent of Judge Wozniak.